### BREESE v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1901.)

#### No. 338.

1. WITNESS—REFRESHING MEMORY.

A teller in a bank, testifying to checks on it, may refresh his memory by examining entries in its books, though some of them were not written by him.

2. BANKING LAWS—VIOLATION—INTENT—EVIDENCE.

As evidence that overdrafts on a bank by its president were made with intent to abstract or misapply its funds it may be shown that at the time of the overdrafts it was hopelessly insolvent, that this was due to its assets being notes of wholly irresponsible persons, and that these notes had been used by the president in connivance with the cashier, who was a director, and another director, to give him a fictitious credit.

3. SAME.

On the question of whether or not a bank president is guilty of abstracting or misapplying its moneys, it is immaterial that he drew out some of it for his children.

4. SAME.

The acts and intent of the president of a bank in obtaining money from it on worthless securities, being such as to make him guilty of embezzlement, abstraction, or willful misapplication of its funds, it is immaterial that his acts were permitted, sanctioned, or ratified by the other officers of the bank, with knowledge of the facts.

5. SAME.

Though the president of a bank, in appropriating and converting its funds to his own use, does it in such a way that it can be easily discovered, and he is liable to a civil action, and does not abscond, or otherwise avoid the civil suit, he may be convicted of embezzlement.

6. CRIMINAL LAW—CHARGE ON EVIDENCE.

It is within the discretion of the judge to refuse to charge that there is no evidence in the case justifying a conviction.

7. SAME—EXPRESSION OF OPINION BY JUDGE.

An expression of opinion by the judge that defendant is guilty is not error, he having cautioned the jury that they were the sole judges of the facts, and should not be governed by the opinion of the court.

8. BANKING LAWS—VIOLATION—INDICTMENT.

An indictment under the national banking laws, which, following the words of the statute, charges the president of the bank with embezzling, abstracting, and misapplying moneys, funds, and credits of the bank at various times, need not specify how much was moneys, how much funds, and how much credits.

9. CRIMINAL LAW—SENTENCE—RECORD.

The record in a misdemeanor case not showing that defendant was present when sentenced, the case will be remanded for new sentence.

Goff, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of North Carolina, at Asheville.

Charles A. Moore and Joseph S. Adams (Tucker & Murphy and Pritchard & Rollins, on the brief), for plaintiff in error.

William P. Bynum, Jr., Special U. S. Atty. (A. E. Holton, U. S. Atty., and Spencer Blackburn, Asst. U. S. Atty., on the brief).

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

SIMONTON, Circuit Judge, and BRAWLEY, District Judge. This case comes up by writ of error to the district court of the United States for the Western district of North Carolina. The defendant below, plaintiff in error here, William E. Breese, president of the First National Bank of Asheville, was indicted for violating section 5209 of the Revised Statutes of the United States. The indictment contains 66 counts. Twenty-two counts, numbered 1, 4, 7, 10, 13, 16, 19, 22, 25, 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, 58, 61, and 64, charge him with embezzlement of the moneys, funds, and credits of the bank of which he was president. Another group of counts, numbered 2, 5, 8, 11, 14, 17, 20, 23, 26, 29, 32, 35, 38, 41, 44, 47, 50, 53, 56, 59, 62, and 65, charge him with wrongfully and willfully abstracting moneys of said bank. Another group of counts—3, 6, 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, 51, 54, 57, 60, 63, and 66—charge him with wrongfully and unlawfully misapplying moneys of said bank. The defendant, having been arraigned, pleaded not guilty to the indictment, a special order, however, having been en-

tered that "such plea shall not operate or have the effect to prevent him taking advantage upon motion in arrest of judgment or on a motion for a new trial of all matters and things which could be taken advantage of by motion to quash or demurrer. Upon motion in arrest of judgment or for a new trial, all such matters and things shall be heard and determined as if the same were being heard upon motions to quash or on demurrer." This order was filed 6th November, 1897. On 7th March, 1899, the defendant filed a demurrer to the 1st, 4th, 7th, 10th, 13th, 16th, 19th, 22d, 25th, 28th, 31st, 34th, 37th, 40th, 43d, 46th, 49th, 51st, 54th, 57th, 60th, and 63d counts of the indictment. Strictly speaking, this demurrer, as a demurrer, came too late after plea of the general issue. The preamble to the demurrer that it is filed by virtue of his right reserved and entered of record at the time he entered his plea of the general issue is not borne out by the record, as shown by the order above recited. Nor, strictly, can it be heard in arrest of judgment, as the verdict was a general verdict on all the counts of the indictment; and, if one of these be good, the verdict cannot be arrested. As no exception on this point has been taken by the government, the point raised in the demurrer will be discussed among the assignments of error. The demurrer was overruled. The cause was tried before a jury, and a general verdict of guilty was entered. Many exceptions were taken during the progress of the trial to the charge of the trial judge, and to matters occurring when and after the verdict was rendered. The case is here upon 16 assignments of error.

The first assignment of error and its subdivisions are upon the action of the court in overruling the demurrer. They deal with it as if it were a demurrer to the whole indictment. In this it is contradicted by the record, which limits it distinctly to the 22 counts above enumerated. Nor are these assignments of error sustained by the bill of exceptions. The exception is confined to the action of the court in overruling the demurrer, which appears in the record. An assignment of error cannot be used to enlarge an exception taken at the trial, or to import a question in the cause not raised in the court below. Ansbro v. U. S., 159 U. S., at page 698, 16 Sup. Ct. 187, 40 L. Ed. 310; Claassen v. U. S., 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966. These assignments of error cannot be considered. The point sought to be raised in them will be discussed when the question of the refusal to grant the motion in arrest of judgment is reached.

The second assignment of error is to the refusal of the trial judge to require the prosecution to furnish the defendant with a bill of particulars. This assignment of error was not pressed in argument, and is without merit. The motion was addressed to the discretion of the court, and its refusal was a proper exercise of this discretion. With the exception, perhaps, of the particular counts in the indictment to which the defendant sought to interpose a demurrer, each of the others fully and clearly sets out every element necessary to constitute the offense intended to be punished, supplemented by averments showing how the abstraction in one class of charges and the willful appropriation in the other class were made, and that they were unlawful. This is all that the accused could require. No one

can doubt as to the exact offense intended to be charged. The accused is clearly informd as to what charges he is called upon to meet. U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819.

The third assignment of error is as to the introduction of certain testimony by the prosecution. It contains 16 specifications. The first of these specifications is as to the testimony of Dorsett, a teller in the bank. He refreshed his memory by examining entries in the books of the bank, and then testified to the facts as of his own knowledge. Some of these entries were in his own hand, and some in the handwriting of others. The matters involved were checks on the bank. The rule is stated by 1 Greenl. Ev. § 436, quoted and approved in Putnam v. U. S., 162 U. S., at page 694, 16 Sup. Ct. 926, 40 L. Ed. 1121:

"Though a witness can testify only as to such facts as are within his own knowledge and recollection, yet he is permitted to refresh and assist his memory by the use of a written instrument, memorandum, or entry in a book, and may be compelled to do so if the writing be presented in court. It does not seem necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided that, after inspecting it, he can speak to the facts from his own recollection."

The second specification is of the same character, and meets the same answer. The third and fourth specifications relate to the testimony of the same witness respecting certain drafts of the First National Bank of Asheville on the Chemical Bank of New York, purchased by checks drawn by W. E. Breese. Dorsett was the teller. He was allowed to prove that the drafts were drawn upon a good account, that they were returned to the First National Bank as paid, and so that Breese got value for his check. There was no error in admitting this testimony. The fifth specification is to the admission of testimony as to the amount of general and special deposits in the bank. Standing by itself, this would appear immaterial. But, in view of other testimony in the cause, it became relevant. The remaining specifications under this assignment are addressed to testimony of certain witnesses. The prosecution had introduced evidence tending to prove that the defendant had admitted to the deputy comptroller of the currency that there had been placed in the bank and discounted by him, the cashier, and Dickerson, a director, worthless notes to an amount of $250,000 and upward; that by means of the credit obtained on these notes money had been withdrawn from the bank, Breese drawing a large sum; that these notes were found in the bank when it failed, and they constituted all the assets of the bank but $52,000, and in this $52,000 were included two notes, each for $10,000, signed by Breese and the cashier; that Breese also admitted that those notes upon which he had received credit were worthless, and that he knew it. The prosecution then introduced the makers of these notes to testify as to the time and circumstances under which they made them, their interest in the notes, and their own total insolvency. Connected with the evidence tending to show that Breese steadily overdrew his account in bank, knowing its totally insolvent condition, all the testimony is relevant; and so, also, the testimony alluded to in the specification just spoken of, as that

showed the liability of the bank. So, when Aldrich, one of the witnesses objected to, testified that he had taken charge of the bank for the comptroller, that he found on hand in cash $480, and that all that he could realize from the assets was $7,852, the jury could have light given to them as to the intent with which the defendant overdrew his account. Proof of these collateral facts was clearly competent in order to discover the intent. Standing alone, the mere overdraft of a bank account, even by the president, may not be a criminal act, and from it by itself one need not infer an intent to injure the bank. But when it is shown that at the date of the overdraft the bank was hopelessly insolvent; that it was made insolvent by reason of the fact that its assets were notes of wholly irresponsible persons; that these notes had been used by the president in connivance with his cashier, who was a director, and with another director, in order to give him a fictitious credit, and that it was used freely,— there is room for inference that the overdraft was made with intent to abstract or misapply the moneys, funds, and credits of the bank. The course pursued by the trial judge is laid down by Mr. Justice Story in Wood v. U. S., 16 Pet. 342, 10 L. Ed. 987:

"The question was one of fraudulent intent or not, and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of a party of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment. Indeed, in no other way would it be practicable in many cases to establish such intent or motive, for the single act, taken by itself, may n t be decisive either way; but, taken in connection with others of a like character and nature, the intent and motive may be demonstrated almost with conclusive certainty. They constitute exceptions to the general rule excluding evidence not directly comprehended within the issue; or, rather, perhaps, it may with some certainty be said the exception is necessarily embodied in the very substance of the rule, for whatever does legally conduce to establish the point in issue is necessarily embraced in it, and therefore the proper subject of proof, whether it be direct or only presumptive."

See, also, Dow v. U. S., 49 U. S. App. 612, 27 C. C. A. 140, 82 Fed. 904.

Other assignments of error relate to the exclusion of testimony offered in behalf of the defendant. The witness was asked as to the salary of Breese, as president, and whether it was credited to him. The question was excluded by the trial judge; but afterwards the same evidence was admitted, and the mistake, if any, was corrected. An effort was made to show that some of the money which the indictment charged was embezzled, abstracted, and misapplied by W. E. Breese was drawn out for his children. It is difficult to see how this could determine the character of the transaction. If it be true that the defendant took the funds of the bank illegally, how can it affect the transaction whether he took it for his own pleasures, or to pay some debt to a third person, or to restore to his children money belonging to them, which he had used? The purpose of the statute is to preserve the moneys, funds, and credits of the bank for legitimate bank purposes, and to meet obligations incurred in its business. It therefore makes it a criminal offense to misapply and convert the funds of these banks, without regard to the fact that the

person so misapplying them received from the misapplied funds any benefit or advantage for himself, or intended these for others. U. S. v. Lee (C. C.) 12 Fed. 819.

When the testimony was ended, the defendant, by his counsel, asked for special instructions to the jury, some of which were refused. The first seven of these relate to the presumption of the law that every accused person is innocent until he has been proved guilty beyond a reasonable doubt. The charge of the court to the jury is as full upon this point as it is possible to be. Said the court:

"The defendant, as I am asked to charge you, is presumed to be innocent. That presumption follows him from the beginning to the end of this trial. The law raises the presumption, and we start into the case with the presumption fixed as though it were testified to and supported by evidence that the defendant is innocent. * * * If you are not satisfied he is guilty, if the government has not by testimony, evidence, proven to your satisfaction beyond a reasonable doubt the charges in the bill of indictment,—and you are trying nothing else,—it is your duty to say he is not guilty."

This is the language of the judge. He was at liberty to prefer his own language to the language of counsel expressing the same idea. Tucker v. U. S., 151 U. S. 164, 14 Sup. Ct. 299, 38 L. Ed. 112.

The requests numbered 9 and 10 were to the effect that if the acts charged against the defendant were permitted and sanctioned by the other officers of this bank, whose duty it was to supervise, manage, and control such matters, defendant could not be found guilty; these officers having the right, in the exercise of their official discretion, to sanction, ratify, and confirm said acts. These were properly refused. Evidence had been submitted to the jury of the acts charged. With this was evidence intended to show the intent with which the acts were done. A part of this evidence was that the defendant, with two of the other directors,—making three out of four, the whole number of directors,—had been engaged in obtaining money from the bank on wholly worthless securities. Surely, evidence that the defendant acted with the sanction, consent, or ratification of these men could not be admissible. Apart from this, the language of the requests is broad enough to mean that, however fraudulent and illegal the acts of the defendant were, if they were permitted, sanctioned, or ratified by the other officers of the bank, they were not unlawful. A startling proposition. The most formal vote of the board of directors could not authorize the embezzlement, abstraction, or willful misapplication of the funds of the bank. Minor v. Bank, 1 Pet. 44, 7 L. Ed. 47. The authority of the officers of the bank and of its board of directors extends only to legitimate transactions honestly intended for the benefit of the bank. U. S. v. Harper (C. C.) 33 Fed. 484.

The nineteenth prayer is, in effect, that, even if defendant appropriated and converted to his own use funds of the bank in such a way that it could have been easily discovered, he was liable to a civil action, and if he did not abscond, or otherwise avoid the civil action, the jury could not convict him of embezzlement. The bare statement of the proposition justifies the refusal of the judge.

The twentieth request is that the jury be charged that there was no evidence in the case upon which the jury would be justified in

returning a verdict against the defendant on the counts of embezzlement. This was a matter wholly within the judge's discretion. He was not obliged to take the question from the jury, however strong may have been his own impression.

The twenty-first, twenty-second, and twenty-third requests proceed on this: Every count in the indictment charging a misapplication of the moneys, funds, and credits of the bank alleges that the misapplication charged was accomplished by means of a check drawn by the defendant, which he paid or caused to be paid to himself, or to some persons to the jury unknown. If the jury find that the check named in the count was not paid to the defendant, or was paid to some persons known, or who could, by diligent inquiry, have become known, to the grand jury, then the petit jury could not convict defendant on that count. In argument it is stated that the name of Dorsett, the teller, was on the bill of indictment; that he was present in Asheville when the grand jury sat, and could have been called; that he was a witness at the trial, and there testified that he knew, and could have told the grand jury, to whom these checks were paid. It would be tedious to go over all the counts to which these requests apply. Taking up the sixth count, the charge is upon a check dated January 7, 1897, made payable to W. H. Westhall, and paid January 11, 1897. As to this check, Westhall testifies that he deposited it in the First National Bank, and got credit for it. So the eighteenth count, charged on a check made payable to Rev. Thomas Lawrence, D. D., February 11, 1897, and paid same day. So W. F. Snider, a check to whom was charged in count No. 51, proved the receipt of the check, and its payment to him. Even in the fourth count, which is put out in full, the charge is drawing a check payable to order of "cash memo." The evidence is that he drew money from time to time, and entered the sums on a cash memorandum in the letter drawer, and subsequently took up the memorandum with a check on the bank. This clearly is a charge of a conversion to his use. The trial judge was right in refusing to charge the jury otherwise.

There are several exceptions to the charge of the trial judge. The charge must be considered as a whole. Considering it carefully, we cannot perceive that the accused suffered any prejudice or injustice whatever. While this court does not approve of certain expressions in the charge, wherein the trial judge stated that, in his opinion, the defendant could not escape conviction; that, viewing the evidence as the court did, the defendant was guilty, and it was the duty of the jury to say so,—yet qualified, as they were, by the caution often repeated that the jury was not bound by the opinion of the judge, that it was the sole judge of the facts, and should not be governed by the opinion of the court, we cannot say that such expressions constitute reversible error. The well-settled practice in the courts of the United States is that expressions of opinion on the facts by the trial judge are not reviewable on error if the jury is given to understand that it is not bound by such opinion, and provided that he submit all questions of fact to its determination. Lovejoy v. U. S., 128 U. S. 173, 9 Sup. Ct. 57, 32 L. Ed. 389; Simmons v. U. S., 142 U. S. 155, 12 Sup. Ct. 171, 35 L. Ed. 968; Doyle v. Rail-

road Co., 147 U. S. 430, 13 Sup. Ct. 333, 37 L. Ed. 223. The following extracts from the charge show that the trial judge repeatedly impressed upon the jury that it should not be governed by his opinion, and that the ultimate decision upon the facts rested with it:

"If the government has not, by its testimony, removed the presumption, on which we started out, that he is innocent, and proved by competent evidence that he is guilty of these three things, embezzlement, abstraction, and misapplication of funds, you should return a verdict of not guilty." Again: "Permit me to say here now, gentlemen, that you are the sole judges of the facts. The court gives you the law, you find facts; and it is the province of the jury which the court has no right to invade. The court may express an opinion, and I say to you now, if anything during the charge of the court seems to intimate an opinion on the part of the court, it is not to govern your actions. The court is discharging its duty, as it has told you you must discharge yours. It may have an opinion which is very pronounced; but I say to you now, as I am required to say under the federal practice, that an expression of opinion on the part of the court is not to govern the jury. Before you can convict the defendant of this offense, you must be satisfied from the evidence beyond a reasonable doubt that he converted the moneys, funds, or credits of the First National Bank to his own use, or to the use of some one else other than the bank, with intent to injure or defraud the bank or some other person. If the government has not satisfied you,—that is, if the government has not produced evidence which would remove from the mind of the men seeking the truth, the men who want to get at the actual facts, which satisfies you beyond a reasonable doubt, first, that he embezzled, then you will say that he is not guilty; second, that he abstracted, then you will say that he is not guilty; and, third, that he misapplied, then you will say that he is not guilty." Again: "Unless the jury are satisfied beyond a reasonable doubt that the defendant did have such intent to injure and defraud the bank or some other person as alleged, even should they find that he did embezzle, abstract, and misapply the moneys, funds, and credits of the bank, they will return a verdict of not guilty." Again: "You are to gather the intent from surrounding circumstances, and, unless you find that he did it with the intent explained to you by the court, then he is not guilty, as I said before." Again: "The jury is instructed to put out of consideration all other evidence, all other transactions and doings of the defendant, no matter how wrongful or unlawful the same may appear to them to be, unless such transactions and doings tend to show the wrongful intent of the defendant in doing the acts charged in the indictment." Again: "The general good character of the defendant ought to have great weight with the jury, and in resolving any doubt which the jury may have as to the criminal knowledge or intention of the defendant the uncontradicted proof of his former good character for honesty and integrity should have great weight, and be allowed to settle that doubt in the defendant's favor. You should consider the defendant's good character, and consider it with the testimony in this case. All the surrounding facts give him the benefit of the good character which he has proven." "If the jury can reconcile the evidence of this case with any reasonable hypothesis consistent with the innocence of the accused, it is their duty to do so, and in that case the verdict should be 'Not guilty.'" "It is an established rule of law that the act with an evil intent must be combined to constitute in law a crime. Therefore, in order for the jury to find the defendant guilty, they must be satisfied by the proof beyond a reasonable doubt that what he did was accompanied on his part with an evil intent."

After stating the opinion of the court that the defendant was guilty and it was their duty to so say, he adds:

"I say again, gentlemen, that you are the judges of the facts; you are the sole judges of the facts. Sometimes judges have assumed the province of the jury in taking from it the decision of the facts of a case, as I have been asked to do in this. I have never, since I have been on the bench, yet assumed that province. I do not do so now. A man has a right to be tried by his peers.

You are the peers of the defendant. You have been selected for this important duty. You are the sole judges of the facts." And in the last words of his charge he says: "I say to you again, gentlemen, that any opinion expressed by the court you are not bound by. That is. the court's opinion, not the jury's opinion. You are the sole judges of the facts, the court is the expounder of the law. Take the case, and find the facts under the law as the court has explained."

The defendant put in a motion in arrest of judgment and to quash the indictment. This motion proceeds upon the ground that the defendant was charged in the several counts at times with embezzling, at other times with abstracting, and at other times with misapplying, moneys, funds, and credits of the bank, without specifying how much was moneys, how much funds, and how much were credits. The defendant was indicted for a misdemeanor. The indictment follows the words of the statute. The rule is thus stated in U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819:

"Where the offense is purely statutory, having no relation to the common law, it is, as a general rule, sufficient in the indictment to charge the defendant with acts coming fully within the statutory description in the substantial words of the statute, without any further expansi n of the matter. But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense. An indictment not so framed is defective, although it may follow the language of the statute."

The indictment in this case fully apprises the accused of the nature of the accusation against him. Is it necessary to state how much of the embezzlement was of moneys, how much of funds, and how much of credits? Inasmuch as the accused was president of the bank, in charge, or, at least, placed in supervision, of its assets, and as the charges against him are of transactions in small amounts, occurring on several days, such particularity is evidently impossible. Were this demand enforced, the government would be entrapped into making allegations which it would be impossible to prove. Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830. The use of these words, notwithstanding their generality, was sustained in U. S. v. Voorhees (C. C.) 9 Fed. 143. They were used in many cases before the supreme court, and no objection was taken. Evans v. U. S., supra; U. S. v. Northway, 120 U. S. 230, 7 Sup. Ct. 580, 30 L. Ed. 664; Batchelor v. U. S., 156 U. S. 429, 15 Sup. Ct. 446, 39 L. Ed. 478; Coffin v. U. S., 156 U, S. 433, 15 Sup. Ct. 394, 39 L. Ed. 481. The rule is well stated in Cochran v. U. S., 157 U. S. 290, 15 Sup. Ct. 630, 39 L. Ed. 705:

"Few indictments under the national banking law are so skillfully drawn as to be beyond the hypercriticism of astute counsel; few which might not be made more definite by additional allegations. But the true test is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

Some of the counts in the indictment—those as to the embezzlement—are liable to the charge of indefiniteness. The other counts are not. And, if the one count be good, a general verdict must stand. Claassen v. U. S., 142 U. S. 140, 12 Sup. Ct. 169, 35 L. Ed. 966.

The last exception which requires notice is that the record does not show that the defendant was present in his own proper person when the judgment was pronounced against him. Examining this record as certified up, it is manifest that that part of it which relates to the point made is an abstract and summary of what took place during the whole trial. It is in these words:

"Court opened from day to day, and engaged in the hearing of the case on trial, to wit, United States v. Wm. E. Breese. until Wednesday, March 15, 1899, and, after argument of counsel for plaintiff and defendant, and the charge of the court, the case is given to the jury for a verdict, and. after deliberation, the jury come into court, and for their verdict say they find the defendant guilty in manner and form as charged in the bill of indictment. At the request of defendant's counsel that the jury be polled, each for himself says the defendant is guilty as charged. Thereupon the defendant, by his counsel, moves for a new trial. Motion overruled. Thereupon U. S. attorney asks that the judgment of the court be pronounced against the defendant. Defendant committed to the custody of the marshal at the conclusion of the court's charge to the jury."

It does not say so in so many words that the defendant was present. Nor is there anything to justify the inference that he was absent. We cannot criticise too strongly a record made up in this way Its value as a record is that it states all matters which occur in the order of their occurrence. It is true that the case at bar, being a misdemeanor in the law, did not require his arraignment, nor his presence during the trial, although he must be present when sentenced. Ex parte Waterman (D. C.) 33 Fed. 29, and cases cited. And it may be that, no point having been made, the clerk took no note of it. Giving to the objection all the force it seeks, we have the case of a trial and conviction of the appellant, with an irregularity in pronouncing sentence. In the language of Beale v. Com., 25 Pa. St. 11, 22, cited with approval in Re Bonner, 151 U. S. 260, 14 Sup. Ct. 327, 38 L. Ed. 153:

"The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine that a prisoner whose guilt is established by a regular verdict is to escape punishment altogether because the court committed an error in passing sentence. If this court sanctioned such a rule, it would fail to perform the chief duty for which it was established."

The appellant complains of the unlawfulness of the mode of passing sentence upon him. He is only entitled to relief from this unlawful feature, and this he will obtain if the court below be given an opportunity for correction in that particular. Let the case be remanded to the district court, with instructions to pass sentence on the appellant, William E. Breese, taking care that he be present, and that it is so stated in the record.

GOFF, Circuit Judge, dissents.