### BREESE v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1906.)

No. 585.

1. INDICTMENT—MOTION TO QUASH—EFFECT OF ORDER EXTENDING TIME FOR FILING.

By the practice prevailing in the federal courts in North Carolina, a motion to quash an indictment is recognized as a proper method of presenting matters outside of the record equally with a plea in abatement, and under such practice an order entered by consent on the entry of a plea of not guilty, reserving to the defendant the right to take advantage, on motion in arrest of judgment or for a new trial, of all matters which could be taken advantage of on motion to quash or demurrer, gave him the right at a subsequent term, and even after trial and conviction, to file a motion to quash, on the ground that the grand jury which returned the indictment was not legally constituted.

2. GRAND JURY—QUALIFICATIONS OF JURORS—NORTH CAROLINA STATUTE.

Under Code N. C. § 1722, as it stood in 1897, which required the county commissioners to select the jury list from "such persons only as have paid tax for the preceding year," as generally understood by the officers acting thereunder, and as inferentially construed by the Supreme Court of the state, only such persons as had paid all of their taxes for the preceding year were competent to serve as jurors or grand jurors.

In Error to the District Court of the United States for the Western District of North Carolina.

For opinion below, see 131 Fed. 915.

Charles A. Moore (Moore & Rollins, on the briefs), for plaintiff in error.

A. E. Holton, Dist. Atty. (A. H. Price, Asst. U. S. Atty., on the brief), for the United States.

Before GOFF, Circuit Judge, and WADDILL and McDOWELL, District Judges.

McDOWELL, District Judge. The plaintiff in error, who will hereinafter be referred to as the defendant, was the president of a national bank in Asheville, N. C., and was on November 6, 1897, in-

dicted for alleged violations of section 5209, Rev. St. [U. S. Comp. St. 1901, p. 3497]. On that day, in pursuance of an agreement entered into by counsel for defendant and the then assistant district attorney, the following order was entered:

"United States v. W. E. Breese.

"Filed Nov. 6, 1897.

"In the above entitled action it is ordered by the court that the defendant, being now arraigned, be and he is now required to enter his pleas to the indictment in said cause and he does now plead not guilty thereto, but such plea shall not operate or have the effect to prevent him taking advantage upon motion in arrest of judgment or on a motion for a new trial of all matters and things which could be taken advantage of by motion to quash or demurrer. Upon motion in arrest of judgment or for a new trial, all such matters and things shall be heard and determined as if the same were being heard upon motions to quash or demurrer. This order shall apply to any and all other indictments pending in this court against the defendant.

"Robert P. Dick, U. S. Judge.

"Concurred in. Covington, Ass't U. S. Att'y."

This cause was first tried in November, 1898, and the judgment against the defendant was ultimately reversed by this court. Breese v. U. S., 106 Fed. 680, 45 C. C. A. 535; Id., 108 Fed. 804, 48 C. C. A. 36. On the next trial the jury failed to agree. And this happened again on the third trial. The last trial was commenced July 12, 1904, and resulted in a verdict of guilty on certain counts in the indictment and a judgment that the defendant be imprisoned in the penitentiary at Atlanta for a term of seven years.

At the trial held in March, 1902, the defendant moved to quash the indictment "for certain reasons contained in a plea and affidavits which are filed." The plea and affidavit referred to do not appear in the record, nor does it appear that the motion was acted upon. In advance of the last trial the defendant filed a paper in the nature of both a plea in abatement and a motion to quash the indictment and certain affidavits in support thereof. This plea was demurred to, and the demurrer was sustained. The plea asserts, in brief, that one C. C. Phifer, one of the members of the grand jury that returned the indictment, was during the year preceding the finding of the indictment the owner of more than $100 worth of personal property, taxes on which had been properly assessed, and that he had not paid his taxes upon said property. Precisely similar statements are made also as to one W. H. Martin, another of the grand jurors. It is also alleged that defendant did not learn of the facts above mentioned, concerning Phifer, until February, 1902, and concerning Martin, until July 7, 1904.

The affidavits which appear in the record are those of A. B. Fortune and W. H. Martin. These affidavits were filed with and were treated as parts of the plea in abatement. The affidavit of Martin is to the effect that he was assessed with personal property and real estate taxes for the year 1896, and that he had not paid any of said taxes at the time he served as a grand juror. The affidavit of Fortune, register of deeds for Buncombe county, and ex officio clerk of the board of county commissioners, is to the effect that Mar-

tin was returned as insolvent, and that the tax collector was allowed a credit for the amount of personal property taxes assessed against him. Martin's real estate was sold under mortgage about February 1, 1897, and the purchaser at a subsequent date not set out paid the taxes thereon for 1896.

The trial court in sustaining the demurrer to the plea in abatement reserved the right to finally decide the question on motion to be made after verdict of guilty, should such verdict be returned. And after the verdict was returned the defendant renewed the motion to quash the indictment. This motion was overruled, and this action of the court was duly excepted to.

The objection to the two grand jurors is founded upon section 1722, Code N. C., as amended, which reads as follows:

"The commissioners for the several counties, at their regular meeting on the first Monday of June, in each year, shall cause their clerks to lay before them the tax returns for the preceding year for their county, from which they shall proceed to select the names of such persons only as have paid tax for the preceding year and are of good moral character and of sufficient intelligence."

The first question presented for consideration is whether or not the objection was presented in due time. The rights of the defendant in this respect are governed by the order of November 6, 1897. If it were a fact that under the practice of the federal courts in North Carolina in criminal causes a motion to quash could only be made for errors apparent from the record, we should be constrained to hold, as urged by counsel for the government, that the intent of that order was merely to save to the defendant the right to raise subsequent to the plea of not guilty such objections as are ordinarily raised by demurrer. But there seems to be no doubt but that a motion to quash has long been recognized in the federal courts in that state as a method of making objections dehors the record equally as proper as a plea in abatement. U. S. v. Kilpatrick (D. C.) 16 Fed. 765. And under the common-law practice in the state courts of North Carolina it appears that the motion to quash for objections dehors the record was used as well as pleas in abatement (State v. Haywood, 94 N. C. 847; State v. Gardner, 104 N. C. 739, 10 S. E. 146), prior to the enactment of the statute (Code, § 1741) requiring that exceptions to grand jurors be taken by motion to quash the indictment. However unwise it may have been on the part of the prosecution to consent to such an order, it seems to us beyond dispute that the defendant was solemnly and beyond recall given the right to make any objection that could be made by motion to quash on a motion in arrest of judgment or on motion for a new trial. In other words, the right to make objections which regularly must be made in advance of plea of not guilty was saved to the defendant until after an adverse verdict.

As above intimated, a plea in abatement is one of the proper methods in the federal courts in North Carolina of raising objections to the qualifications of the grand jurors who returned the indictment. U. S. v. Kilpatrick, supra; Crowley v. U. S., 194 U. S. 461, 24 Sup. Ct. 731, 48 L. Ed. 1078. In filing the paper now under consideration,

whether treated as plea in abatement or a motion to quash, in advance of the last trial, we think the defendant properly raised for decision the question next to be considered, and we must now consider the validity of the objection to the jurors.

As the question as to the qualification of the two grand jurors was raised in proper manner and in due time, the ruling of the trial court thereon is subject to review, and for error in deciding such question adversely to the defendant this court must reverse. Crowley v. U. S., supra. Reading the plea in abatement and the two affidavits together, and they were thus treated in the lower court, the only contention that can be made in support of the proposition that Phifer and Martin were qualified grand jurors is as follows: There is no allegation that Martin was not assessed for 1896 for capitation tax, or that he had not paid this tax. As to Phifer, it is not alleged that he had not been assessed with and had not paid both his poll tax and real estate taxes. The contention of the government is that a mere failure to pay a part of the taxes assessed against a juror does not disqualify him. The defendant's contention is that a juror must have paid all the taxes properly assessed against him in order to be qualified.

To our surprise we have been unable to find that this question has ever been presented to, and expressly decided by, the Supreme Court of North Carolina. If the contention of the defendant be sound, it must at least be said that the language used in section 1722, supra, is not as happily chosen as might be. In strictness a citizen who has paid his capitation tax, although delinquent in the payment of sundry other taxes assessed against him, is one who has "paid tax." However, we have been led to the conclusion that the intent of the Legislature in enacting section 1722 was as is contended by counsel for the defendant; and that a failure to pay any part of the total assessment is, under such circumstances as we have here, a disqualification.

The statute in question requires the clerks of the boards of county commissioners to lay before them "the tax returns for the preceding year." So far as we have been enabled to discover, there is no statute requiring the tax collectors to make a "tax return" showing the names of the taxpayers. Where the tax collector desires credit for taxes assessed against insolvents he must return a list of such insolvents. But we have found no provision requiring a return of a list of citizens who have paid all or a part of the taxes assessed against them. In practice, as we are led to believe, the statute in question is in great measure disregarded by the boards of county commissioners. But, when a question arises before the board as to the qualifications of a citizen for jury service in respect to the payment of taxes, the tax collectors' receipt books are referred to. If the citizen has paid all the taxes for the preceding year, the receipt will have been delivered, and the stub (showing the name of the taxpayer, the amount paid, and the date of payment) will alone remain in the book. If the citizen has wholly failed to pay his taxes, the unsigned receipt will still be in the book; and, if he has paid part only of the taxes assessed against him, a credit for such part is indorsed on the

stub, but the receipt is left in the book. So far as we have been able to acquire information, we are led to believe that the practice of the boards is, in so far as they regard the statute, to leave on the jury lists only the names of citizens found on the stubs, from which receipts in full have been detached. In other words, although we regard such investigation as we have been able to make as far from conclusive, it would seem that the statute is in practice construed as excluding from jury service all citizens except those who have paid taxes in full.

In 1899 (Acts 1899, p. 901, c. 729; Revisal of 1905, § 1957) section 1722 of the Code was amended so as to read as follows:

"The board of county commissioners for the several counties at their regular meeting on the first Monday in June, in the year 1905, and every two years thereafter, shall cause their clerks to lay before them the tax returns of the preceding year for their county, from which they shall proceed to select the names of all such persons as have paid all the taxes assessed against them for the preceding year. A list of the names thus selected shall be made out by the clerk of the board of commissioners and shall constitute the jury list, and shall be preserved as such."

We are not able to draw a satisfactory conclusion based on the changes in the statute made by this amendment. There is no preamble, nor is there in the act of 1899 any statement of the reasons for enacting the amendment. From the case of State v. Peoples, 131 N. C. 784, 42 S. E. 814, it may possibly be inferred that the boards of county commissioners in some of the counties made a practice of excluding all negroes from the jury lists. And it is at least possible that the sole reason for the amendment was to make an end of this practice. Under the amendment the boards can no longer reject citizens on the ground that they are not "of good moral character and of sufficient intelligence." And it is required that the boards shall select the names of all such persons as have paid "all the taxes assessed against them for the preceding year." If such was the only purpose of the amendment, it would seem not improbable that, in changing the language from "have paid tax," to "have paid all the taxes assessed against them," the Legislature did not intend to change the law in this respect, but merely intended to repeat the language of the old statute, and thus furnished an indication of the commonly accepted construction of that statute. However, this reasoning may be erroneous, and is certainly very far from being conclusive.

The Supreme Court of North Carolina has in many cases (some only of which are now before us) referred to the statute in force when the indictment at bar was returned, and in numerous instances it is paraphrased, as if it read "such as have paid their taxes." See Lee v. Lee, 71 N. C. 144: " * * * Moral and intelligent men, who have paid their taxes the preceding year." State v. Wincroft, 76 N. C. 38: "A juror was challenged because he had not paid his taxes." State v. Eddens, 85 N. C. 524: "On looking at the statute, * * * which is the only one that prescribes the qualifications of jurors for the superior court, we find that they are required to be such as have paid their taxes for the year preceding that in which they may be drawn, and as are of sufficient intelligence and good moral character." State

v. Carland, 90 N. C. 673: "They are not tales jurors, who are required, not only to be freeholders, but to have paid their taxes for the preceding year, as is required of jurors on the original panel." State v. Hargrave, 100 N. C. 485, 6 S. E. 186: "The juror challenged was on a like footing, as to the payment of taxes, with regular jurors. He had paid taxes for the fiscal year 1886." State v. Davis, 109 N. C., 781, 14 S. E. 56: "The cause was tried August term, 1891. The regular jurors were, therefore, drawn from the list revised by the commissioners at their session on the first Monday in September, 1890. They could not then have thrown out a juror for 'not having paid his taxes for the fiscal year ending June, 1890.'" State v. Fertilizer Co., 111 N. C. 659, 16 S. E. 231: "The motion to quash * * * was in apt time, and it being admitted that three of the grand jurors had failed to pay their taxes for the year 1890, * * * there was no error in granting it." State v. Perry, 122 N. C. 1020, 1021, 29 S. E. 384: "The judge, before the grand jury is impaneled, always asks (or should do so) if any of them had failed to pay their taxes for the preceding year. * * * If any respond affirmatively they are stood aside." See, also, State v. Haywood, 94 N. C. 847.

As the question we have under consideration was not involved in any of the foregoing cases, the expressions quoted furnish, of course, insufficient authority for holding that the expression "paid tax" means "paid all his taxes." But the language above quoted has certainly some tendency to support the contention that the statute has been thus understood by the Supreme Court of North Carolina.

In the case of State v. Heaton, 77 N. C. 505, the opinion was written by Judge Bynum. The following is all that is said concerning the qualification of a grand juror objected to on the ground of nonpayment of taxes:

"Upon the arraignment of the defendant, he filed a plea in abatement, alleging that George N. Harris, one of the 12 grand jurors who found the indictment, was disqualified because he had not paid tax for the preceding year, as required by Code Civ. Proc. § 229. Upon this plea, an issue was made by the state, upon the trial of which it appeared in evidence that the juror had paid a part of said tax, and that the sheriff was enjoined by an action from collecting the residue of the tax for that year, of this juror and other citizens of the county, and that the injunction was not vacated until after the time for collecting the tax of that year had expired, and that in fact the residue of the tax had not been paid at the time of the trial. Upon this state of facts, the court held that Harris was a competent juror. We concur in that opinion.

"It does not appear at whose instance the injunction was obtained, but suppose it had extended to all the taxpayers, and that in consequence none had paid the tax of the preceding year. Could it be held that this failure operated as a suspension of the criminal law of the state? The statute must, if possible, receive a reasonable construction not inconsistent with the public welfare. The failure to pay the tax was not the juror's voluntary act, but was caused by the act of the court in suspending its collection. It nowhere appears but that the juror was able, ready, and willing to pay the tax, and in fact he had paid all that the law, as then administered, required him to pay."

The fact that the admitted part payment of his taxes by the grand juror is not held by Judge Bynum to be the reason for holding the juror to have been qualified is, by inference at least, strongly in

support of the view that, under ordinary circumstances, the payment of all the taxes properly assessed is requisite. In fact, in the absence of a decision in a case in which the point now under consideration has been expressly raised and passed upon, we are inclined to give the inference drawn from the Heaton Case very great weight. In prescribing the qualifications of jurors there is something to be said in favor of the citizen who has paid only a part of the taxes assessed against him over the citizen who has paid no taxes. But, as the former may have performed only in very small part his full duty, it is clear that the intent may have been to make eligible only such citizens as had paid all the taxes properly assessed against them. If such was the intent in enacting section 1722, the language employed, as has been said, is not particularly apt. But, on the other hand, if the intent was to qualify citizens who had paid only some one item of the total assessment, the language of the statute is again ill adapted to express such intent. Much more clearly would such intent have been expressed if the language had been "such persons only as have paid any tax for the preceding year."

Having reached the conclusion that the two grand jurors were not qualified, and that the objection was made in due time, it is unnecessary that we consider the remaining assignments of error. The judgment of the trial court will be reversed, and the cause remanded for the entry of judgment in accordance with this opinion.

Reversed.