## WALKER v. WILKINSON.

## WILKINSON v. WALKER.

(Circuit Court of Appeals, Fifth Circuit.
January 22, 1925.)

Nos. 4335, 4373.

**1. Bankruptcy ⬅293(2)—Where bill shows voidable transfers within four months, bankruptcy court has jurisdiction of suit to recover such assets.**

Where trustee in bankruptcy's bill against principal stockholder and president of bankrupt corporation shows voidable transfers of assets of bankrupt within four months before filing of petition in bankruptcy, court of bankruptcy, under Bankruptcy Act, §§ 60b, 67e, and 70e, as amended (Comp. St. §§ 9644, 9651, 9654), has jurisdiction of suit to recover such assets.

**2. Bankruptcy ⬅287(3) — Equitable action against president and principal stockholder of bankrupt corporation maintainable to recover assets of bankrupt.**

Bill in equity against president and principal stockholder of insolvent corporation is proper remedy to recover assets of bankrupt, to which such stockholder and president holds legal title.

**3. Judges ⬅56—Order of reference made by judge after filing of affidavit of prejudice held ratified by judge hearing remainder of case.**

Where judge, on affidavit of bias and prejudice being filed under Judicial Code, § 21 (Comp. St. § 988), after commencement of

trial, refused to certify his disqualification, and referred cause to master, but requested that further hearings be had before different judge, who subsequently overruled motion to set aside order of reference, *held* that, if first judge's right to hear cause was affected by filing of affidavit, action of second judge amounted to ratification of order of reference.

**4. Courts ⬅332—Equity rule held not to deprive court of power to refer cause involving investigation of complicated transactions.**

Where case is exceptional one, involving matters of account, and investigation of books and accounts with reference to apparently complicated transaction, court is not, by equity rule 59, deprived of power to order reference to master.

**5. Abatement and revival ⬅8(2)—Trustee's right to sue to recover concealed assets held not affected by pendency of another action between same parties.**

Trustee in bankruptcy's right to institute and prosecute suit against president and principal stockholder of bankrupt corporation to recover assets of bankrupt *held* not affected by pendency of another suit by trustee against same defendant, not involving same assets.

**6. Witnesses ⬅255(9)—Permitting witness to refresh memory by reading stenographic report of testimony given in another proceeding held not error.**

Where witness testified that he had independent recollection of testimony given by defendant in another proceeding, it was not error to permit such witness to refresh his memory by reading stenographic report of that testimony.

**7. Bankruptcy ⬅140(½)—Corporate president's deposit of security with bank to cover overdrafts of corporation held not to render such security subject to other liabilities of corporation.**

President and principal stockholder of corporation, by depositing money of his own in bank to guarantee overdrafts on corporation's account, *held* not to have made money so deposited capital of bankrupt, or subject generally to risks of its business other than its liabilities to bank.

**8. Bankruptcy ⬅165(1)—President of insolvent corporation, bringing about payment of liabilities on which he was surety, held to have accomplished voidable preference.**

Principal stockholder and president of insolvent corporation, who within four months prior to filing of bankruptcy petition brought about payment of liabilities of bankrupt for which he was liable as guarantor or surety, *held* to have in effect created preference, amount of which was recoverable from him by trustee in bankruptcy under Bankruptcy Act, § 60 (Comp. St. § 9644).

Appeal and Cross-Appeal from the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Suit by W. W. Wilkinson, trustee in bankruptcy of the Walker Grain Company,

against J. L. Walker. Decree for plaintiff (294 F. 939), defendant appeals, and plaintiff cross-appeals. Decree modified, and, as modified, affirmed.

See, also, 292 F. 395; 294 F. 951; 295 F. 123; 296 F. 850; 3 F.(2d) 872, 875.

W. E. Spell, of Waco, Tex., Jas. A. Templeton, of Fort Worth, Tex., G. A. Stultz, of Wichita, Kan., and Clay Cooke, of Fort Worth, Tex., for appellant and cross-appellee.

Stanley Boykin and H. C. Ray, both of Fort Worth, Tex. (George M. Conner, Capps, Cantey, Hanger & Short, and Boykin & Ray, all of Fort Worth, Tex., on the brief), for appellee and cross-appellant.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

WALKER, Circuit Judge. The appellee, as trustee in bankruptcy of Walker Grain Company, filed his bill in equity against the appellant, J. L. Walker. The bill contained averments to the following effect:

Walker Grain Company, a corporation organized in 1911, was adjudged a bankrupt on August 16, 1918, upon an involuntary petition filed on that date. Since its organization appellant has been its principal stockholder, its president, and has controlled and dominated its affairs. The business of the bankrupt was confined to the purchase and sale of grain. It bought grain in carload lots, with draft attached to bill of lading, and would resell and divert shipments upon their delivery. It kept its assets concealed by fraudulently transferring them to the appellant. Assets belonging to the bankrupt were kept concealed in the following manner: The bankrupt kept in the American National Bank of Fort Worth a bank account styled "Walker Grain Company," or "The Walker Grain Company," and another account was kept in the same bank, that account until February, 1917, being in the name of appellant, and after that date being in the name of "J. L. Walker, Trustee." The deposits to, and drafts against, the bankrupt were so managed that customarily at the close of each day's business the bankrupt's account would show an overdraft, which overdraft would be met by the bank, pursuant to authority given to it, transferring the amount of the overdraft from the above-mentioned "J. L. Walker," or "J. L. Walker, Trustee," account to the bankrupt's account; such amount being retransferred to the account from which it had been transferred when additional deposits were credited to the bankrupt's account. The moneys that went into said "Trustee" account were transferred to it by the bankrupt, and at all times were the earnings of the bankrupt, and in reality its concealed assets.

The agreement with the bank as to that account was that no checks would be drawn against it, except to cover the bankrupt's indebtedness to the bank, without the special permission of the bank. No substantial balance was ever allowed to accumulate in the account in said bank in the name of the bankrupt. By permission of said bank and the bankrupt, appellant, in June, 1917, withdrew $75,000 from the "Trustee" account and invested that amount in United States Liberty bonds, which bonds were registered in the name of the appellant, and were then placed in said bank as collateral to secure the bank against overdrafts and indebtedness of the bankrupt to said bank in the same manner as the "Trustee" account. Within four months prior to the filing of the bankruptcy petition the bankrupt, while it was insolvent, with the purpose of effectuating the concealment of its assets, and for the purpose of giving appellant, who claimed to be a creditor of the bankrupt, a preference and advantage over other creditors of the bankrupt of the same class, and with full knowledge of appellant that such transfers would give him a preference over other creditors, transferred to appellant the balance then remaining in said "Trustee" account, to wit, the sum of $45,000, and after the filing of the bankruptcy petition transferred to appellant said Liberty bonds, of the par value of $75,000.

The bill also contained averments to the effect that moneys aggregating the sum of at least $300,000, constituting assets of the bankrupt, were invested in described real estate, the title to which was taken in the name of the appellant. The bill contained prayers that appellee have judgment against appellant for the above-mentioned sums, that appellant be required to account for the sums of money transferred to him as alleged in the bill, and for general relief.

After the above-mentioned allegations had been put in issue, a trial of the case was begun before Judge Wilson, and some evidence was adduced in his presence. Thereafter appellant filed an affidavit of disqualification of Judge Wilson on account of alleged bias and prejudice. Judge Wilson refused to certify his disqualification, and

made an order referring the cause to a master, to hear and determine the same and report to the court his findings of fact, and conclusions of law, with recommendations thereon; that order providing for a reference to the master of the testimony already stenographically taken in the case, and for the master hearing such additional evidence as may be material, relevant, and pertinent to the cause. Thereafter, pursuant to a request of Judge Wilson, the hearings in the case were before Judge Atwell. Judge Atwell overruled a motion made by the appellee to set aside the above-mentioned order of reference made by Judge Wilson. The master made a report stating his conclusions of fact and of law, and recommendations thereon. Upon hearing by the court of appellant's exceptions to the master's report, some of those exceptions were sustained, and the remainder thereof were overruled. Thereupon the court rendered its decree, which adjudged that the appellee have and recover of and from appellant $19,000, with interest thereon at 6 per cent. per annum from November 2, 1918, and costs of court. The appellant appealed from that decree, and the appellee sued out a cross-appeal.

[1-3] Some contentions made in behalf of appellant, and grounds on which those contentions are adversely disposed of, are indicated by the following statement: As the averments of the bill showed voidable transfers of assets of the bankrupt within four months before the filing of the petition in bankruptcy, the court of bankruptcy had jurisdiction of the suit by the trustee in bankruptcy for the recovery of such assets. Bankruptcy Act, §§ 60b, 67e and 70e, as amended (Comp. St. §§ 9644, 9651, 9654). As the legal title to the bankrupt's assets in question stood in the name of the appellant, averments of the bill showing that he held those assets in trust for the bankrupt, with the result that the bankrupt's asserted right was an equitable one, a bill in equity for the enforcement of that asserted right was maintainable. Even if Judge Wilson's right to act in the case was effected by the filing of the affidavit of bias and prejudice after the trial of the case was commenced by him (Judicial Code, § 21 [Comp. St. § 988]), the action of Judge Atwell in overruling the motion to set aside the order of reference made by Judge Wilson amounted to a ratification of such order by Judge Atwell.

[4-6] Equity rule 59 does not deprive a court of the power in such a case as the instant one to make such an order of reference to a master as the one which was brought into question. There was ground for the conclusion that the case was an exceptional one, involving matters of account, the investigation of books and accounts with reference to apparently complicated transactions. In such a situation it is within the discretion of the court to refer the case to a master, to hear the evidence and report his findings and conclusions; the court retaining the power to review such findings and conclusions. Holt Mfg. Co. v. Best Gas Traction Co. (D. C.) 245 F. 354. The appellee's right to institute and prosecute this suit was not affected by the pendency and prosecution of another suit brought by the appellee against the appellant (Walker v. Wilkinson [C. C. A.] 296 F. 850), the latter suit not involving the alleged transfers of alleged concealed assets of the bankrupt which were brought into question by this suit. Reversible error was not committed by permitting a witness for the appellee, who testified as to admissions made by the appellant, when examined as a witness in another proceeding, to refresh his memory by reading a stenographic report of that testimony made by another person; the witness stating that he had an independent recollection of the testimony as it was given and stenographically reported. Breese v. United States, 106 F. 680, 45 C. C. A. 535.

Findings by the master, which were approved by the court, included the following:

"The Walker Grain Company, since 1908, has transacted all its banking business through the American National Bank of Fort Worth, Tex., as has J. L. Walker; an account being carried there in the name of Walker Grain Company, and one in the name of J. L. Walker. All drafts drawn by persons selling grain to the Walker Grain Company were paid through said bank, and all grain sold with draft attached was collected through said bank, and the credits and debits shown by the bank account of Walker Grain Company represents the amount of said drafts, and as illustrative of the immensity of its business, its credits by virtue of drafts drawn by it on purchasers of grain from it, as shown by said account, amounted to $13,365,000 during the year 1917, and the debits for that year were something less, and said account likewise reflects a very large business during preceding years, especially the years 1915 and 1916, and the first part of the year 1918, the business having increased each year. * * *

"The amounts for which drafts were drawn by the Walker Grain Company on purchasers of grain from it were immediately placed to its credit in said American National Bank, and it would usually take from three to five days for the bank to collect said drafts, and during the busy season the bank was daily paying drafts for grain purchased by the Walker Grain Company, and frequently it would pay drafts amounting to $100,000 or $200,000 or $300,-000 in one day, when the Walker Grain Company had no actual money in the bank, but only credit for the drafts drawn on purchasers for grain sold; the grain purchased by it being nearly always diverted in the same car to the purchaser. Hence, from the inception of the account with said bank, in 1908, before it would agree to pay drafts coming in or to give credit for the drafts going out, it required J. L. Walker to personally guarantee it against any overdrafts or other indebtedness of the Walker Grain Company to it, and required him to subject his personal account, in which he testified the bank required him to keep 'so much money,' to the payment of any such overdrafts or other indebtedness, and said bank was permitted to daily transfer moneys from said J. L. Walker account to the account of the Walker Grain Company to cover such overdrafts, and when sufficient outgoing drafts were collected to cover the overdrafts, the moneys were transferred back to the account of J. L. Walker, and going back as far as the year 1915, and up to February 23, 1917, the books of said bank show that it did almost daily transfer from the said J. L. Walker account to the account of the Walker Grain Company large sums of money to cover its overdrafts. This agreement between the bank and J. L. Walker was reduced to writing in 1915 or 1916. * * *

"On February 23, 1917, a change in form, but not in substance, was made in the agreement between J. L. Walker and the American National Bank with respect to the manner of taking care of the overdrafts referred to in the preceding paragraph, and for that purpose a new account was created in said bank in the name of J. L. Walker, Trustee, and the first deposit in said account was made on February 23, 1917, amounting to $60,000, and on April 20, 1917, another deposit was made in said account amounting to $60,000, making an aggregate of $120,000 in said trustee account, and the same never did exceed that amount. The first deposit of $60,000 was transferred from the personal account of J. L. Walker upon his order or direction, by the bank, to said trustee account; $51,500 of the second deposit of $60,000 was checked out of the Walker Grain Company account by check dated April 20, 1917, and payable to J. L. Walker, which check was executed by the 'Walker Grain Company by J. L. Walker, President,' for the purpose of having it deposited to the credit of said trustee account, and which was accordingly done, and the balance of said $60,000, amounting to $8,500, consisted of a number of checks which J. L. Walker testified were executed to him by Union Grain Company and deposited in said trustee account by said J. L. Walker. Under the agreement between J. L. Walker and the bank, J. L. Walker could not draw checks against the trustee account without the permission of the bank, and it was given absolute control of said funds, in so far as the paying of any overdrafts or other indebtedness of the corporation to it was concerned."

Other findings were to the following effect: In June, 1917, $75,000 of the amount to the credit of the trustee account was invested in Liberty bonds, which were delivered to the bank to be held in the trustee account. The cash to the credit of the trustee account was paid out on checks given by the appellant within four months before the filing of the bankruptcy petition. The Liberty bonds held in that account were delivered to him on November 2, 1918, after the bankruptcy adjudication.

It is disclosed by the opinion rendered that the amount of the recovery awarded by the decree appealed from was the result of the conclusions that the above-mentioned $51,500 was property belonging to the bankrupt, but that appellant was not liable for the whole of that amount, because $32,-500 of the amount in the trustee account was used in paying overdrafts in the bankrupt's account in said bank; the principal amount awarded by the decree, $19,000, being the difference between $51,500 and $32,-500.

In behalf of the appellant it was contended that the above-mentioned check for $51,-500 was received by him in payment of notes of the bankrupt to him, evidencing debts owing to him by the bankrupt. Both the master and the court found against that contention. The evidence relied on to support that contention was not such as to warrant this court in setting aside the just-mentioned conclusions successively reached by the master and the court. Evidence ad-

duced well supported the conclusion that $51,500 belonging to the bankrupt went into the trustee account, and that to that extent the bankrupt continued to be the beneficial owner of the funds held by the bank in that account.

The appellee and cross-appellant does not contend that he was entitled to any recovery based on the allegations and proofs as to investments in real estate of moneys received from the bankrupt by the appellant and cross-appellee. He does contend that all of the $120,000 which went into the trustee account should be treated as property of the bankrupt's estate, and subject to be applied to the payment of its debts, though a substantial part of the money which went into that account was held by the appellant in his own name and right prior to the creation of any debt which the bankrupt still owes. The ground of that contention is that funds of the appellant which went into that account really became part of the bankrupt corporation's capital, because those funds were contributed to meet the obligations of the bankrupt's business, and were intended to be subject to the risks of that business.

[7] Without denying that that contention should prevail, if the ground relied on to support it existed in fact, we are of opinion that it cannot properly prevail, because the evidence adduced did not prove that the money of the appellant which went into the trustee account was intended by him to be used as capital of the bankrupt, or to be subject generally to the risks of the bankrupt's business. Before and after that money went into the trustee account, the appellant, by written contract with the bank, was personally obligated to guarantee "any overdraft or other obligations, liability, or indebtedness" to the bank "which may at any time be created or exist" against the bankrupt. That obligation was incurred in favor of the bank alone, and the bank alone became entitled to the benefit of the additional security afforded by the trustee account deposit. One who furnishes security for specified liabilities of another does not by so doing make what he puts up as security the property of the debtor, or subject to all of the latter's liabilities. This is true, though the furnisher of security is a stockholder of a corporation which has some of its liabilities so secured. What is so put up as security does not become an asset of the corporation, and subject to be applied to the satisfaction of its liabilities generally. By guaranteeing and securing the bankrupt's liabilities to the bank, the appellant did not make his property so furnished as security subject to be applied on the bankrupt's liabilities to other parties.

[8] As above indicated, $32,500 of the amount in the trustee account was used, within four months before the filing of the bankruptcy petition, to discharge liabilities of the bankrupt to the bank for which the appellant was a guarantor or surety. Even if it can properly be inferred that the $32,-500 came, not from that part of the fund in the trustee account which belonged to the appellant, but from the part of that fund which resulted from the deposit therein of $51,500 of the bankrupt's money, the stated use of the $32,500 was at a time and under such circumstances as to give rise to a voidable preference, whereby the appellant was benefited, with the result of entitling the appellee to recover from the appellant the amount so paid. The appellant, the president of the bankrupt and the surety or guarantor of its liabilities to the bank, with knowledge of its insolvency, within four months prior to the filing of the bankruptcy petition, brought about the payment of the $32,500 on liabilities of the bankrupt to the bank, whereby he was benefited in the amount of such payment; he at that time having reasonable cause to believe that such payment would effect a preference. A result was that a preference arose, the amount of which was recoverable from the appellant by the appellee, the trustee of bankrupt's estate. Bankruptcy Act, § 60 (Comp. St. § 9644); Newport Bank v. Herkimer Bank, 225 U. S. 178, 32 S. Ct. 633, 56 L. Ed. 1042; Paper v. Stern, 198 F. 642, 117 C. C. A. 346; Cohen v. Goldman, 250 F. 599, 162 C. C. A. 615; Watchmaker v. Barnes, 259 F. 783, 170 C. C. A. 583; Collier on Bankruptcy (11th Ed.) 899. An effect of the decree rendered was to enable the appellant to retain the benefit of a preference, which was voidable at the instance of the appellee.

We conclude that the appellant received the benefit of all of the $51,500 beneficially owned by the bankrupt which went into the trustee account, and that this occurred under such circumstances as to make him liable to the appellee for the whole of that sum, with interest thereon. The appellant takes nothing by his appeal. On the cross-appeal of the trustee of the bankrupt's estate, the decree appealed from is modified, by making the amount awarded to the plaintiff in the suit the sum of $51,500, with interest thereon at the rate of 6 per cent. per

annum from the 2d day of November, 1918, together with all court costs. As so modified, the decree is affirmed; the costs of the appeal and of the cross-appeal to be taxed against the appellant, the defendant in the court below.

Modified and affirmed.