## SHERIDAN v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit.   October 16, 1916.)

No. 2705.

1. BANKS AND BANKING &#10147;257(1)—NATIONAL BANKS—CONVERSION OF DEPOS-
ITS—"SPECIAL DEPOSIT"—"GENERAL DEPOSIT."

An indictment, alleging that defendant, the president of a national bank-
ing association, abstracted and converted its funds in violation of Rev.
St. § 5209 (Comp. St. 1913, § 9772) averred the abstraction and conversion
of a deposit made for the sole use and benefit of the depositor, charging
that the property consisted of moneys, funds, and credits of the national
banking association, that the depositor was a depositor and creditor of
the association, and that defendant intended to injure and defraud such
association and the depositor. *Held*, that as, where money or its equiva-
lent is deposited in a bank without special agreement, the law implies
that it is to be mingled with other funds, and the relation of creditor and
debtor is created, the deposit being general, while a special deposit is a
delivery of property, securities, or money for the purpose of having the
identical thing safely kept and returned to the depositor the indictment
is not bad, as charging the conversion and abstraction of a special deposit
instead of the conversion of funds of a national banking association,
which is the offense denounced; the allegation that the deposit was for the
depositor's sole use and benefit evidently being intended to indicate that
only the depositor was authorized to withdraw the funds.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§
965, 970–973; Dec. Dig. &#10147;257(1).

For other definitions, see Words and Phrases, First and Second Series.
Deposit.]

2. BANKS AND BANKING &#10147;234—NATIONAL BANKS—OFFENSES—STATUTE.

Rev. St. § 5209 (Comp. St. 1913, § 9772), denouncing the offense of con-
version or abstraction of the moneys or property of a national banking
association by an officer or agent, declares that one violating the section
shall be deemed guilty of a misdemeanor and shall be imprisoned not less
than five nor more than ten years. Pen. Code, § 335 (Act March 4, 1909,
c. 321, 35 Stat. 1152 [Comp. St. 1913, § 10509]), provides that all offenses
which may be punished by death or imprisonment for a term exceeding
one year shall be deemed felonies, and all other offenses shall be deemed
misdemeanors. *Held* that as the offense denounced by section 5209 is an
infamous crime, the provision for punishment was not repealed by the
Penal Code, defining misdemeanors as punishable by a term not exceeding
one year; the fact that the offense was classed as a misdemeanor not
changing its nature.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§
879–967, 970–1127; Dec. Dig. &#10147;234.]

3. CRIMINAL LAW &#10147;1032(3)—INDICTMENT—OBJECTIONS.

Unless objections to the form of an indictment are pointed out by de-
murrer or otherwise taken advantage of on trial, such objections cannot
be urged after verdict, unless they affect the substantial rights of ac-
cused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2627; Dec.
Dig. &#10147;1032(3).]

4. BANKS AND BANKING &#10147;257(1)—NATIONAL BANKS—OFFENSES—INDICT-
MENT.

An indictment charged that defendant was the president of a national
banking association; that he did willfully and unlawfully abstract and
convert to his own use, benefit, and advantage certain moneys, funds, and

credits of the bank of the amount and value of $5,000, a more particular description of which was to the grand jury unknown, from and out of the moneys, funds, and credits of the association, and held by the same as a deposit for the sole use and benefit of a depositor and creditor of the bank, by means of an instrument designated a memorandum check, without the knowledge and consent of the banking association, and with the intent to injure and defraud the association, the depositor, and the creditor. Rev. St. § 5209 (Comp. St. 1913, § 9772), declares that any officer or agent of a national banking association who shall convert or appropriate any money of the association with intent to defraud shall be guilty of an offense. *Held*, that the indictment was not open to attack because the property was described as certain moneys, funds, and credits of the association of specified amount in dollars; a more particular description to the grand jury being unknown.

. [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 970–973; Dec. Dig. ☞257(1).]

5. BANKS AND BANKING ☞257(1)—NATIONAL BANKS—OFFENSES—INDICTMENT.

Such indictment sufficiently charged the manner of the alleged abstraction and conversion, and, having alleged that the money was abstracted without the knowledge and consent of the association, it was unnecessary to allege that it was done without the knowledge or authority of the directors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 970–973; Dec. Dig. ☞257(1).]

6. BANKS AND BANKING ☞257(1)—NATIONAL BANKS—OFFENSES—INDICTMENT.

The indictment was sufficient, though charging that the abstraction was done by means of a memorandum check; for the means of abstraction are immaterial.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 970–973; Dec. Dig. ☞257(1).]

7. BANKS AND BANKING ☞257(1)—NATIONAL BANKS—OFFENSES—INDICTMENT.

In such case, the indictment, which alleged that the money taken by defendant was converted to his own use and benefit, and to the use and benefit of another, is not open to attack on the ground that it was ambiguous and uncertain as not showing what part was received by either of the parties; for if the money was willfully and unlawfully abstracted, without authority and with intent to defraud, it was immaterial that defendant used any portion thereof.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 970–973; Dec. Dig. ☞257(1).]

8. BANKS AND BANKING ☞257(1)—NATIONAL BANKS—OFFENSES—INDICTMENT.

In such case, the indictment need not allege that the money was abstracted without the knowledge or consent of the depositors; that being a matter of defense to be shown by defendant.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 970–973; Dec. Dig. ☞257(1).]

9. INDICTMENT AND INFORMATION ☞121(1)—SUFFICIENCY—BILL OF PARTICULARS.

Where an indictment sufficiently charged all of the essential facts to constitute the offense, defendant, if desirous of other details must demand a bill of particulars.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 316; Dec. Dig. ☞121(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. CRIMINAL LAW ⊚⇒814(8, 9)—TRIAL—INSTRUCTIONS.

The evidence showed that defendant, the president of a national banking association, who had charge of loans, abstracted funds from the account of a depositor and converted the same to his own use, although it appeared that he executed in favor of the depositor a promissory note, which was never delivered, but was retained in the possession of the bank. An instruction that an officer of a national bank, who has full charge of making loans, has the right to lend any portion or all of the money deposited in the bank by depositors on general checking accounts, without first obtaining permission of the directors, was refused. *Held*, that the instruction was properly refused, not being applicable to the facts of the case.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1979; Dec. Dig. ⊚⇒814(8, 9).]

11. BANKS AND BANKING ⊚⇒257(2)—INDICTMENT—VARIANCE.

An indictment, charging conversion and abstraction of the funds of a national banking association, with intent to defraud the association and the depositor whose account was charged with the defalcation, alleged that the abstraction was made by means of a memorandum check. The evidence showed that defendant, the president of the bank, who made the abstractions which were charged to the accounts of several depositors, in each case made memorandum checks, charging the depositors with the amount of their deposits, that in one case the memorandum check was deposited to the account of a third person, while in another it was deposited to the account of defendant, and that notes for the amount of the unauthorized loans were executed. *Held*, that there was no variance between the indictment and proof.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 971–973; Dec. Dig. ⊚⇒257(2).]

12. BANKS AND BANKING ⊚⇒257(3)—NATIONAL BANKS—OFFENSES.

Where the president of a national banking association converted and abstracted funds of the association by charging the depositors' accounts with amounts of purported loans which were unauthorized by the depositors, and then crediting the amounts of the loans to his own account, or that of other persons, the president must be deemed guilty of the offense of abstraction or conversion of the moneys or property of a national banking association denounced by Rev. St. § 5209 (Comp. St. 1913, § 9772); every man being presumed to intend the legitimate consequences of his acts.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 966, 974–976; Dec. Dig. ⊚⇒257(3).]

13. BANKS AND BANKING ⊚⇒256(3)—OFFENSES—EMBEZZLEMENT.

In such case, as the deposits were made with the bank and not with the president, the fact that the president had control of the bank and dictated its policy did not render the offense embezzlement, instead of unlawful conversion and abstraction of the funds of the association, as charged.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 964; Dec. Dig. ⊚⇒256(3).]

14. CRIMINAL LAW ⊚⇒1169(1)—REVIEW—HARMLESS ERROR—EVIDENCE.

In such case, evidence that the account of the one to whom the president lent the money charged to have been abstracted was in overdraft at the time of the loan, while possibly immaterial, was not prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3137; Dec. Dig. ⊚⇒1169(1).]

15. CRIMINAL LAW ⊚⇒371(1)—EVIDENCE—OTHER OFFENSES.

In a prosecution against the president of a national banking association for unlawfully converting and abstracting funds of the association, where

his method of procedure was to charge depositors' accounts with the amounts of his conversions, evidence of similar offenses or transactions other than those charged in the indictment was admissible to show the intent with which the abstractions were made.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830, 831; Dec. Dig. ☞371(1).]

16. BANKS AND BANKING ☞257(4)—NATIONAL BANKS—OFFENSES.

In a prosecution for unlawfully converting and abstracting the funds of national banking association with intent to defraud, where the defendant charged the amounts of his appropriations against the accounts of depositors, *held* that the question whether the depositors authorized the procedure, intending to make loans, was, under the evidence, for the jury.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 965; Dec. Dig. ☞257(4).]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Oregon; Frank H. Rudkin, Judge.

Thomas R. Sheridan was convicted of violating Rev. St. § 5209 (Comp. St. 1913, § 9772), by abstracting and converting to his own use money and funds of a national banking association, with intent to defraud, and he brings error. Affirmed.

John L. McNab, of San Francisco, Cal. (James W. Ryan, of San Francisco, Cal., of counsel), for plaintiff in error.

Clarence L. Reames, U. S. Atty., and Robert R. Rankin, Asst. U. S. Atty., both of Portland, Or.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error was convicted on two counts of an indictment which charged him with the violation of section 5209, Revised Statutes (section 9772, Comp. St. 1913), by abstracting and converting to his own use the moneys and funds of a national banking association, with intent to defraud the association and the depositor of the money.

[1] It is contended that the demurrer to the indictment should have been sustained on the ground that the plaintiff in error is therein charged with the unlawful abstraction and conversion of a special deposit. The contention that the deposits were special is based on the allegation contained in each count that the deposit which was alleged to have been abstracted and converted was a deposit made for the "sole use and benefit" of the depositor; and it is argued that to abstract and convert a special deposit is not an offense against the United States. But the allegation so referred to is not all that the indictment charges as to the nature of the deposits. It is also alleged in each count that the property abstracted and converted consisted of "certain moneys, funds and credits of the national banking association," and that the depositor in each case "was a depositor and creditor" of the bank, and that the intent of the plaintiff in error was "to injure and defraud said national banking association and said depositor and creditor." All the allegations, when taken together, can only mean

that the deposit referred to in each count was a general deposit, creating the relation of debtor and creditor between the depositor and the bank. In a sense the primary purpose of a general depositor in a bank is to deposit his money for his own "sole use and benefit," and not for the use and benefit of another. It is evidently in that sense that the words are used in the indictment. The purpose of them is to show that the money deposited was the property of the depositor, and that it created a fund in the bank which he, and no other, had the right to draw out by check. It is not alleged in the indictment that there was any agreement as to the character of the deposit, or that the deposit was accompanied with a request that the money be kept apart.

"Where money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with other funds of the bank, and the relation of creditor and debtor is created, and the deposit is general; the bank becoming the owner of the fund." Michie on Banks and Banking, p. 1290.

"A special deposit is a delivery of property, securities, or even money to the bank for the purpose of having the same safely kept and the identical thing deposited returned to the depositor." 7 Corpus Juris, 630.

"Where money, not in a sealed packet, or closed box, bag or chest, is deposited with a bank or banking corporation, the law presumes it to be a general deposit, until the contrary appears; because such deposit is esteemed to be the most advantageous to the depositary, and most consistent with the general objects, usages, and course of business of such companies or corporations." 7 Corpus Juris, p. 631, note (a).

Tested by these rules, we entertain no doubt that the deposit referred to in each count is therein alleged to have been a general deposit to the credit of the depositor.

[2] It is contended that the demurrer to the indictment should have been sustained on the ground that section 5209 defines an offense for which no punishment is provided. It is said that, since the offense described in that section is therein specifically designated a misdemeanor, and section 335 of the federal Penal Code of 1910 provides that all offenses which may be punished by death, or imprisonment for a term exceeding one year, shall be deemed felonies, and all other offenses shall be deemed misdemeanors, it follows as a corollary of the statute that no misdemeanor shall be punished by a term exceeding one year, and it is urged that the provision for the milder punishment should be held to repeal the older and severer punishment. The contention cannot be sustained. Long prior to the enactment of the federal Penal Code of 1910 the Supreme Court had held, in substance, that while the offense is in the statute designated a misdemeanor, it is in fact an infamous crime. In United States v. De Walt, 128 U. S. 393, 9 Sup. Ct. 111, 32 L. Ed. 485, it was held that the offense denounced in section 5209 is an infamous crime, for which the defendant could not be held to answer on information, but only on presentment or indictment. In re Claasen, 140 U. S. 200, 11 Sup. Ct. 735, 35 L. Ed. 409, is to the same effect. The court there said of the crime denounced in section 5209:

"In determining whether the crime is infamous, the question is whether it is one for which the statute authorizes the court to award an infamous punishment."

In Folsom v. United States, 160 U. S. 121, 16 Sup. Ct. 222, 40 L. Ed. 363, the court said:

"The offense denounced by section 5209 of the Revised Statutes is punishable by imprisonment not less than five nor more than ten years, and is therefore an infamous crime."

Section 335 of the Penal Code has no effect upon section 5209 except to define as a felony the offense therein described.

[3-6] It is urged that the indictment is defective, in that it merely charges the offense in the language of the statute; that it contains no sufficient description of the property charged to have been abstracted; that the acts constituting the fraud, or intention to defraud, are not stated; that there is failure to charge the violation of a right of either the bank or a depositor; that the allegation that the abstraction was accomplished by means of a memorandum check is unintelligible and repugnant to the other charges; and that there is failure to charge that the abstraction was made without the knowledge or consent of the directors of the bank. We find that the indictment goes further than to charge the offense in the language of the statute. Count 4, for example, charges that the plaintiff in error was the president of the bank; that on April 15, 1911, he, being such president, did willfully and unlawfully abstract and convert to his "own use, benefit, and advantage, certain moneys, funds, and credits" of said bank of the amount and value of $5,000, "a more particular description of which is to this grand jury unknown, from and out of the moneys, funds, and credits of said national banking association," held by the same as a deposit for the sole use and benefit of one Laura M. Verrill, a depositor and creditor of the bank, by means of a certain instrument, designated a memorandum check, without the knowledge and consent of said national banking association, and with the intent then and there on the part of him to injure and defraud the said national banking association and said depositor and creditor. No specific objection to the form of the indictment was made by demurrer or otherwise. The sole ground of demurrer was that the matters stated "are not sufficient in law." Unless objections to the form of an indictment are specifically pointed out by demurrer or are otherwise taken advantage of on the trial, it is too late, after verdict, to urge such objections, unless it is apparent to the court that they affect the substantial rights of the accused. Holmgren v. United States, 217 U. S. 509, 523, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Armour Packing Co. v. United States, 209 U. S. 56, 84, 28 Sup. Ct. 428, 52 L. Ed. 681; Connors v. United States, 158 U. S. 408, 411, 15 Sup. Ct. 951, 39 L. Ed. 1033.

It is not ground of demurrer to an indictment under section 5209 that the property is described as certain moneys, funds and credits of the bank of a specified amount in dollars, as it was described in this case, where, as here, it is followed by the averment that a more particular description is to the grand jury unknown. Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; Breese v. United States, 106 Fed. 680, 45 C. C. A. 535; United States v. Voorhees (C. C.) 9 Fed. 143.

The indictment sufficiently charges the manner of the alleged abstraction and conversion. United States v. Eastman (C. C.) 132 Fed. 551; Dickinson v. United States, 159 Fed. 801, 86 C. C. A. 625. It alleges that the money was abstracted without the knowledge and consent of the national banking association. It was not necessary to allege in addition that it was done without the knowledge or authority of the directors. Flickenger v. United States, 150 Fed. 1, 79 C. C. A. 515; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; United States v. Morse (C. C.) 161 Fed. 429. And it was sufficient to charge that the abstraction was done by means of a memorandum check, for the means of abstraction are immaterial. United States v. Harper (C. C.) 33 Fed. 471; United States v. Breese (D. C.) 131 Fed. 915.

[7] In the first count it was charged that the money so taken by plaintiff in error was converted to his own use and benefit, and to the use and benefit of one B. C. Agee. It is said that this allegation is ambiguous and uncertain because it does not show what part was received by either of the parties. But if the money was willfully and unlawfully abstracted without the authority of the bank, and with the intent to defraud the bank and its depositors, it is immaterial whether the plaintiff in error used the money, or any portion thereof. Breese v. United States, 106 Fed. 680, 45 C. C. A. 535; United States v. Lee (C. C.) 12 Fed. 819.

[8] Nor was it necessary to allege that the money was abstracted without the consent or knowledge of the depositors. If in fact it was abstracted with such consent and knowledge, it was a matter of defense to be shown by the plaintiff in error.

[9] Our conclusion is that the indictment sufficiently stated all of the essential facts to constitute the offense with which the plaintiff in error was charged. If there were other details of which he desired to be informed, his remedy was to demand a bill of particulars. In Cochran v. United States, 157 U. S. 287, 15 Sup. Ct. 628, 39 L. Ed. 704, Mr. Justice Brown said:

"Few indictments under the national banking law are so skillfully drawn as to be beyond the hypercriticism of astute counsel—few which might not be made more definite by additional allegations. But the true test is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

[10] It is contended that the trial court erred in denying a requested instruction, to the effect that an officer of a national bank, who has full charge of making loans on behalf of the bank, has a right to lend any portion or all of the money deposited in the bank by depositors on general checking accounts, without first obtaining permission from the depositors. This requested instruction was properly denied, not for the reason that it was incorrect as a general principle of banking law, but for the reason that it was inapplicable to the case. The evidence under each count under which he was convicted was that the

plaintiff in error took the money from the account of the depositor and converted it to his own use. That evidence is not negatived by the fact that in each case he executed in favor of the depositor a promissory note, which was never delivered, but was retained in the possession of the bank.

[11] Under the assignment that the court erred in denying the motion of the plaintiff in error for an instructed verdict in his favor, it is contended that the evidence demonstrates that no money was ever abstracted by the means of "a certain instrument designated as a memorandum check," as was charged in the indictment. The evidence is that the plaintiff in error in each case made a memorandum check, charging the depositor with the amount of his deposit; and the evidence under the first count is that thereupon, on the date of the memorandum check, he made out a deposit slip, showing that the amount covered by the memorandum check was deposited to the credit of one B. C. Agee, and that the note bore the same date. Under the fourth count the memorandum check shows that on April 15, 1911, the depositor's money was loaned by the plaintiff in error, but the books show that the money was transferred to the account of the plaintiff in error on the books of the bank, and that he, on that date, executed to her a promissory note for the amount. As we have already shown, it was not necessary that the indictment should show the means by which the money was abstracted. But in view of the evidence, there is no ground for saying that it was not done in each case by means of a memorandum check.

[12] It is said that there was no proof of the intent of the plaintiff in error to defraud. The case comes within the general rule that the law presumes every man intends the legitimate consequence of his own acts. The acts were deliberately committed, and they resulted in loss to the depositors. Agnew v. United States, 165 U. S. 53, 17 Sup. Ct. 235, 41 L. Ed. 624; United States v. Northway, 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664.

[13] It is urged that the evidence discloses a case of embezzlement rather than abstraction, and that therefore the precise charge made in the indictment was not met by the proof. It is said that the plaintiff in error himself had possession of the funds of the bank, and reference is made to the testimony of the cashier, who said that the plaintiff in error had the full and exclusive power of lending the money of the bank, and that "Tom Sheridan and I ran this bank," and it is argued that the cashier's part consisted merely of clerical duties, while the plaintiff in error, as president, had possession of the money at the time when he is charged with the unlawful abstraction. But it does not follow, and the court would not be justified in holding, that because the plaintiff in error was the manager of the bank the possession of moneys in the bank was his possession and not that of the bank. Clearly, all funds deposited were deposited with the bank, and not with the president and manager thereof, and the possession of the deposits was the bank's possession.

We find no ground to sustain the contentions that the offense shown by the evidence was maladministration, and not unlawful abstraction,

or that it consisted wholly in making a false entry or obtaining money under false pretenses.

[14] It is contended that the trial court erred in admitting in evidence under the first count testimony that the account of the person to whom the plaintiff in error lent the money charged to have been abstracted was in overdraft at the time of the loan. This evidence may have been immaterial to the issues, but it is not perceived that it could have been prejudicial to the plaintiff in error.

[15] It is contended that it was error to admit evidence of similar offenses or transactions other than those charged in the indictment. We think the case comes clearly within the rule that evidence of similar transactions may be admitted to show the intent with which the specific act under investigation was done. Wood v. United States, 16 Pet. 342, 10 L. Ed. 987. The rule has been applied to cases of indictment under section 5209. Breese v. United States, 106 Fed. 680, 45 C. C. A. 535; Brown v. United States, 142 Fed. 1, 73 C. C. A. 187; Prettyman v. United States, 180 Fed. 30, 103 C. C. A. 384; Breese v. United States, 203 Fed. 824, 122 C. C. A. 142.

[16] It is contended that the motion for an instructed verdict should have been granted, for the reason that the evidence is that the depositors named in the first and fourth counts assented to the acts of the plaintiff in error and authorized him to draw their funds and invest them. The depositor named in the first count denied that he ever gave authority to the plaintiff in error to loan the $230 so taken from his account. As to the fourth count, the testimony of the depositor was that the plaintiff in error asked her if she wanted to loan the money, that he said that he would get a good loan for her, and that she supposed that the bank was to loan the money. She testified that she never authorized the making of the memorandum check by which the money was drawn from her account, and that when the check was shown her later she had supposed that it was for the purpose of showing that the bank had loaned the money, and that the plaintiff in error then told her that her money was safely invested. The letters signed on June 20, 1911, by both of these depositors, at the instance of the National Bank Examiner, were clearly ineffectual to legalize the abstraction of the depositors' moneys by the plaintiff in error. Concerning the defense that the plaintiff in error was authorized to take these moneys, the court instructed the jury that if they found from the testimony that the plaintiff in error was authorized by the depositors to draw those moneys, or if they found from the course of dealing between the plaintiff in error and the depositors that the former had reasonable cause to believe, and in good faith did believe, that he was authorized, then he was not guilty of the crime here charged. The jury have found that the plaintiff in error was not so authorized, and we would not be justified in holding that there is not evidence to sustain that conclusion.

We find no error. The judgment is affirmed.

ROSS, Circuit Judge (dissenting). The gist of the charge contained in count 1 of the indictment is that on the 7th day of March, 1911, the

defendant was president of the First National Bank of Roseburg, Or., a theretofore duly organized and established national banking association under the laws of the United States, doing business at the city of Roseburg, and that, being such president, the defendant on that day and at that place willfully and unlawfully abstracted and converted to his own use, and to the use of one B. C. Agee, $230 from and out of the moneys of the bank "held by said national banking association as a deposit for the sole use and benefit of one David Hull, a depositor and creditor of said the First National Bank of Roseburg, by means of a certain instrument designated as a memorandum check, without the knowledge and consent of said national banking association," and with the intent to injure and defraud both the said bank and the said depositor.

The gist of the fourth count is that the defendant was, on the 15th day of April, 1911, president of the First National Bank of Roseburg, Or., theretofore duly organized and established under the laws of the United States and doing business at Roseburg, and that the defendant, then being such president, on the day and at the place alleged, willfully and unlawfully abstracted and converted to his own use $5,000 from and out of the moneys of the said bank "held by said national banking association as a deposit for the sole use and benefit of one Laura M. Verrill, a depositor and creditor of said the First National Bank of Roseburg, by means of a certain instrument designated as a memorandum check, without the knowledge and consent of said national banking association," and with the intent to injure and defraud both the said bank and the said depositor.

To each of the foregoing counts the defendant demurred on the ground that no offense against the United States was therein charged, which demurrer was overruled.

"All deposits made with bankers," said the Supreme Court in Marine Bank v. Fulton Bank, 2 Wall. 252, 256, 17 L. Ed. 785, "may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter, and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand."

The same thing has been many times held by the same court, and by subordinate courts.

It necessarily follows, I think, that money deposited with a bank "for the sole use and benefit of" the depositor cannot be held to be a loan to the bank, nor that the depositor thereby parts with the title to his money. Manifestly, it cannot be received and held for the sole use and benefit of the depositor and at the same time become the property of the bank and subject to such use as the bank should see fit to put it. In the latter case, the relation of debtor and creditor would exist between the parties; in the former, that of trustee and cestui que trust. Titlow v. Sundquist, 234 Fed. 613, —— C. C. A. —— (decided at the present term). It necessarily results, in my opinion, that the $230 alleged by the first count of the indictment to have been

willfully and unlawfully abstracted and converted by the defendant to his own use and to the use of one B. C. Agee, with the intent to injure and defraud both the bank and the depositor David Hull, was not the money of the bank, but of Hull, and that the $5,000, alleged by the fourth count to have been willfully and unlawfully abstracted by the defendant and converted to his own use with the intent to injure and defraud both the bank and the depositor Laura M. Verrill, was not the money of the bank, but of Laura M. Verrill. And such, evidently, was the view of the learned judge of the court below, for among his instructions to the jury are the following:

"It is likewise conceded that the defendant Thomas R. Sheridan was the president of that association during all the times mentioned in the indictment and for many years prior thereto; it is likewise conceded that the defendant Thomas R. Sheridan withdrew from the bank the several sums of money belonging to the several depositors as set forth in the indictment by means of certain memorandum checks received in evidence. The principal question for your consideration will be—or at least the first question for your consideration will be: Was the defendant authorized by the depositors to withdraw these moneys? If you find from the testimony in this case that he was so authorized, or if you find from the course of dealing between the defendant and the depositor that the defendant had reasonable cause to believe, and in good faith did believe, that he was so authorized, then he is not guilty of the crime here charged. But if you are satisfied beyond a reasonable doubt that he had no authority from the depositor to withdraw the funds, and if you further find that he had no reasonable cause to believe and did not in good faith believe, that he had such authority, then his abstraction of the funds was wrongful, and the crime is complete if you find that the abstraction was made with the intent to injure or defraud either the banking association or the depositor. * * *

"Applying this rule to the case at bar, if you should find from the evidence beyond a reasonable doubt that the defendant without authority took from the accounts of his depositors named in the indictment, without previous authorization from them, their money and converted the same to his own use and benefit, and thereby placed the same beyond the control of said depositors, you would be justified then in presuming that he did these acts with intent to injure and defraud said depositors."

If the language of a penal statute be plain—

"it will be construed as it reads, and the words of the statute given their full meaning; if ambiguous, the court will lean more strongly in favor of the defendant than it would if the statute were remedial." Bolles v. Outing Co., 175 U. S. 262, 265, 20 Sup. Ct. 94, 44 L. Ed. 156.

The defense of the defendant was that the depositors Hull and Laura M. Verrill authorized him to draw their money from the bank and loan it for them, which defense the jury by its verdict rejected; but the difficulty is that the unlawful withdrawal of their money from the bank by the defendant and its unlawful conversion by him with the intent to injure and defraud both the bank and the depositor is not, by the statute in question, made an offense against the United States. Section 5209 of the Revised Statutes (Comp. St. 1913, § 9772), as amended by section 335 and the concluding clause of section 341 of the act of March 4, 1909 (Comp. St. 1913, §§ 10509, 10515), makes it a felony to so withdraw and convert, with intent to defraud, money of the bank, but not of a depositor. And such is here conceded to be the meaning of the statute by the attorney for the government, he,

however, insisting that the counts of the indictment under consideration do·allege that the money deposited by the respective depositors mentioned belonged to the bank, with which contention, for the reasons stated, I am unable to agree.

It results that, in my opinion, the judgment should be reversed, and the cause remanded to the court below, with directions to sustain the demurrer to counts 1 and 4 of the indictment.