## WILLIAMS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   August 1, 1921.   Rehearing Denied

October 10, 1921.)

**1. Grand jury �kö=8—Statute relating to "jurors" held applicable to grand as well as petit jurors.**

Judicial Code, § 277 (Comp. St. § 1254), providing that "jurors" shall be returned from such parts of the district from time to time as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur unnecessary expense or unduly burden the citizens of any part of the district with such service, *held* applicable to grand jurors as well as petit jurors.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Juror.]

**2. Grand jury ⊨=8—Failure to enter court's order directing clerk and jury commissioner to place names in jury box did not affect legality of grand jury.**

That court's order directing the clerk and the jury commissioner to place in the jury box the number of names as required by Judicial Code, § 276, as amended by Act Feb. 3, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1253), and section 277 (Comp. St. § 1254), was not entered upon the minutes, did not render the grand jury drawn from such names illegal, so as to invalidate the indictment returned by it.

**3. Embezzlement ⊨=28—Counts held to sufficiently describe property embezzled by bank officer.**

In a prosecution of a bank officer for embezzlement, in violation of Rev. St. § 5209 (Comp. St. § 9772), counts of indictment charging the willful and fraudulent embezzlement of "moneys, funds, and credits" of the bank theretofore received by him, "to the amount and value of" specified amounts, a more particular description of which was to the grand jurors unknown, with intent to injure and defraud the bank, *held* to sufficiently describe the property embezzled.

**4. Embezzlement ⊨=29—Count of indictment held sufficient.**

A count of an indictment charging that the vice president of a national bank, having control over its moneys, funds, and credits, did willfully and unlawfully, with intent to deceive the comptroller, draw a check upon the bank for a specified amount, by himself as an officer of drawer corporation, and willfully and unlawfully caused such amount to be applied in payment of the check, with intent to deceive the comptroller, having no authority from such corporation to draw such check, or cause its payment, and not being an officer thereof, *held* sufficient to charge a violation of Rev. St. § 5209 (Comp. St. § 9772), making it a crime for an officer of an association to embezzle, abstract, or willfully misapply any of its funds.

**5. Indictment and information ⊨=110(13)—Count charging bank officer with abstracting described notes from credits of bank held sufficient.**

Count of indictment charging that vice president and agent of a bank did knowingly, willfully, unlawfully, and feloniously and with intent to deceive any agent appointed as comptroller to examine the affairs of the bank, "abstract" from credits thereof certain specifically described promissory notes belonging to the bank, and constituting part of its assets, *held* sufficient to charge a violation of Rev. St. § 5209 (Comp. St. § 9772), making it a crime for an officer or agent of an association to embezzle, abstract, or willfully misapply any of its moneys, funds, or credits, as against the contention that the word "abstract" was too indefinite.

⊨=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern Division of the Southern District of California.

Charles L. Williams was convicted of embezzlement, and he brings error. Affirmed.

L. E. Dadmun, of San Diego, Cal., for plaintiff in error.

Robert O'Connor, U. S. Atty., and Wm. Fleet Palmer, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The indictment upon which the plaintiff in error was tried contained 27 counts, the trial resulting in a verdict of not guilty under four of them, a disagreement of the jury as to fourteen, and a verdict of guilty under nine, namely, 16, 17, 19, 21, 22, 31, 33, 34, and 35, upon which last-mentioned counts the judgment complained of was based. Our inquiry, therefore, must be confined to those counts only, and to such portions of the very voluminous record as are pertinent thereto; the record, however, containing a full transcript of the proceedings on the trial, the laborious examination of which has satisfied us that, as respects the *facts* of the case, certainly there is no ground upon which we would be justified in interfering with the result reached in the trial court.

One of the assignments of error insisted upon by the plaintiff in error is that the trial court erred in denying his motion to quash the indictment on the ground that the grand jury that returned it was not a legal body, for the reason that the court made no order directing the clerk and the jury commissioner to select jurors to be put in the grand and petit jury box. In support of the motion the clerk was called as a witness and gave this, among other, testimony:

"There was no order made by the court directing myself and the commissioner to select jurors to be put into the grand and petit jury box. There was no order of that kind made. The jury commissioner and clerk put the names in the box without a special order of the court to do so. The court did not at any time order and direct myself and the commissioner to select names from the different counties in this district and place them in the jury box to constitute petit and grand juries. The court did not make any order directing a certain number of names to be selected and drawn and put in the jury box. I can't turn to any order made in relation thereto. No such order was made. I put in the box—that is, the jury box—names of persons which were thereafter to be used as petit and grand jurors, without the court having first made an order directing me so to do. Q. Just prior to selecting the names for this grand jury box, which composed this grand jury, did you and the commissioner meet and select names to be put in the box before the grand jury was selected? A. I can't give you the date now that we put them in. I don't know whether it was immediately preceding the drawing of the grand jury or some time preceding. Q. Well, you did do so, though, previous to selecting the grand jury? A. Yes. Q. On more than one occasion after the commissioner was appointed by the court? A. Yes. Q. How many occasions? A. On two or three: I am not certain. Q. Have you any minute entry of those occasions? A. No."

Section 276 of the Judicial Code (Comp. St. § 1253) prescribes that both grand and petit jurors shall be publicly drawn from a box containing at the time of each drawing the names of not less than 300 persons possessing the qualifications prescribed in the preceding section,

which names shall have been placed therein by the clerk of such court and a commissioner, to be appointed by the judge thereof, or by the judge senior in commission in districts having more than one judge, which commissioner shall be a citizen of good standing, residing in the district in which such court is held, and a well-known member of the principal political party in the district in which the court is held opposing that to which the clerk may belong, the clerk and said commissioner each to place one name in said box alternately, without reference to party affiliations, until the whole number required shall be placed therein.

By Act Feb. 3, 1917, c. 27, 39 Stat. 873 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1253) the above-mentioned section was so amended as to confer upon a "duly qualified deputy clerk" the same authority as was therein given the clerk.

Section 277 of the Judicial Code (Comp. St. § 1254) is as follows:

"Jurors shall be returned from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly burden the citizens of any part of the district with such service."

[1] That section is applicable to grand, as well as petit, jurors. Agnew v. United States, 165 U. S. 44, 17 Sup. Ct. 235, 41 L. Ed. 624; Spencer v. United States, 169 Fed. 562, 95 C. C. A. 60.

The clerk also testified that when the grand jury that returned the indictment in question was drawn more than 300 names were in the box, and the record also shows that the judge of the court had directed the clerk and jury commissioner regarding the statutory requirements, although it does not appear that such order was entered upon the minutes of the court. The record of the case, however, is absolutely destitute of anything tending to show that the plaintiff in error was in any way prejudiced thereby.

In United States v. Reed, 27 Fed. Cas. 727, the court, composed of Circuit Justice Nelson and District Judge Hall, held that under the act of August 8, 1846 (9 Stat. p. 73, § 3), providing that no grand jury should be summoned in the federal courts except upon an order for a venire, to be made by a judge, a verbal order given to the clerk, though not entered of record or filed, was sufficient. And in the Case of Fries, 9 Fed. Cas. 826, 923, Circuit Justice Iredell ruled that the required venire, issued with the sanction of the court, had the same effect as though the express order of the court had been annexed thereto.

In United States v. Caplis et al. (D. C.) 257 Fed. 840, where a plea in abatement to an indictment for a conspiracy was based on the allegation that the jury commissioner who assisted in the drawing of the grand jury which returned the indictment was not a well-known member of the principal political party in the district opposed to that to which the clerk belonged, the District Court, in overruling the plea, referred to a similar ruling made by Circuit Judge Pardee and District Judge Swain in the case of United States v. Chaires et al., in the Circuit Court for the Northern District of Florida (40 Fed. 820), where the court said:

"An inspection of this statute shows that the work of preparing the names of the persons possessing the qualifications of jurors, and placing them in the box, is to be done by the clerk of the court and a jury commissioner to be appointed by the judge. The duty to be performed by these parties is clearly and specifically prescribed in the statute. It may be considered, and probably is, mandatory; but it is entirely distinct from the duty devolving, under the statute, upon the judge. The plea under consideration relates entirely to the performance of the duty of the judge. By the statute the judge is to appoint a commissioner, who shall be a citizen of good standing, who shall reside in the district in which the court is held, and who shall be a well-known member of the principal political party in the district opposing that to which the clerk belongs. The question is whether this part of the statute is mandatory or directory; whether, in appointing a jury commissioner, the judge, while endeavoring to comply with the law, must make no mistake of fact or of judgment, but must, at the peril of all subsequent proceedings, be sure to appoint a citizen, not only of standing, but of good standing, and not only a known, but a well-known, member of the principal political party opposed to that to which the clerk belongs. The statement of the question, and the nature of the case, satisfies us that the statute in this particular is directory, and not mandatory. What is the standard for a citizen in good standing? By what rule is it to be determined who is a well-known member of a political party? Considering that the judge has knowledge, judicial or otherwise, as to the political party of the clerk, by what rule is the judge to determine which is the principal party opposed? Suppose that the clerk is an Independent or a Prohibitionist? In case of a challenge to the array of jurors, or a plea in abatement, who is to try the issue? All matters and questions come back to the judge. The judge, in the exercise of a sound discretion, under the responsibilities of his office, directed by the statute, passes upon the qualifications of the jury commissioner he appoints, and his action would seem to be final and conclusive, except, perhaps, in the court that can call the judge to account for misbehavior in office. Particularly must this be the case where neither injury nor prejudice nor oppression is apparent nor is averred."

By Act Feb. 26, 1919, Congress made this addition to section 269 of the Judicial Code:

"On the hearing of any appeal, certiorari, writ of error, or motion for a new trial in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." 40 Stat. p. 1181, Comp. St. Ann. Supp. 1919, § 1246.

Prior to that amendment the general rule was that for such irregularities as did not prejudice the defendant he had no cause for complaint. Agnew v. United States, 165 U. S. 36, 44, 17 Sup. Ct. 235, 41 L. Ed. 624, and cases there cited; 24 Cyc. of Law & Proc. 217, where may be found cited many decisions of the courts, and where it is said:

"The statutory provisions with regard to making up the jury list are ordinarily held to be merely directory, and errors and irregularities in failing to comply strictly with their provisions, which are not prejudicial to the parties, do not invalidate the list, or furnish any ground for challenging the array; but a substantial compliance with the law is necessary, and a disregard of the material provisions which make up the essential features of the system, and are designed to secure and preserve a fair and impartial trial, is not a mere irregularity, and is ground for challenging the array, even though it does not affirmatively appear that any injury has resulted therefrom."

See, also, Apgar v. United States, 255 Fed. 16, 166 C. C. A. 344.

[2] We are of the opinion that the fact that the order of the court below directing the clerk of the court and the jury commissioner thereof to place in the jury box the number of names as required by the

statute was not entered upon the minutes, did not render the grand jury that returned the indictment in question an illegal body.

It is urged on the part of the plaintiff in error that neither of the counts under which he was convicted and upon which he was sentenced states facts sufficient to constitute a crime, and therefore that his demurrer to each of them should have been sustained.

Count 19 alleged the willful and fraudulent embezzlement by the defendant of the "moneys, funds, and credits" of the bank theretofore received by him "to the amount and value of $20,000," a more particular description of which was to the grand jurors unknown, and with intent to injure and defraud the said bank.

Count 34 alleged the willful and fraudulent embezzlement by the defendant of "moneys, funds, and credits" of the bank theretofore received by him, "to the amount and value of $2,000," a more particular description of which was to the grand jurors unknown, with intent to injure and defraud the said bank.

Count 35 alleged the willful and fraudulent embezzlement by the defendant of "moneys, funds, and credits" of the bank theretofore received by him, "to the amount and of the value of $3,000," a more particular description of which was to the grand jurors unknown, with intent to injure and defraud the said bank.

In Sheridan v. United States, 236 Fed. 305, 149 C. C. A. 437, where the plaintiff in error was convicted under two counts of an indictment which charged him with abstracting and converting to his own use "certain moneys, funds, and credits" of a certain national banking association, and alleging that the depositor in each instance "was a depositor and creditor" of the bank, and that the intent of the plaintiff in error was "to injure and defraud said national banking association and said depositor and creditor," the majority of this court sustained the validity of the indictment, saying, 236 Fed. at page 310, 149 C. C. A. at page 442:

"It is not ground of demurrer to an indictment under section 5209 that the property is described as certain moneys, funds, and credits of the bank of a specified amount in dollars, as it was described in this case, where, as here, it is followed by the averment that a more particular description is to the grand jury unknown"—citing Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; Breese v. United States, 106 Fed. 680, 45 C. C. A. 535; United States v. Voorhees (C. C.) 9 Fed. 143.

[3] Applying that ruling to counts 19, 34, and 35 of the indictment in the present case, it is obvious that they must be held valid.

Count 31 charged, in effect, that the defendant, on the 29th day of January, 1917, at the time being vice president and agent of the American National Bank of San Diego, Cal., and as such having the management and control of its moneys, funds, and credits, did, with intent to deceive any agent of the Comptroller of the Currency who might be appointed to examine the affairs of said banking association, knowingly, willfully, and unlawfully misapply certain of such moneys, funds, and credits, to the amount and value of $46,219.10, a more particular description of which moneys, funds, and credits was to the grand jurors unknown, by making and drawing this check:

"American National Bank.

"San Diego, Cal., Jany 29, 1917.  No. ——.

"Pay to the order of  Cash  $46,219.10, Forty-Six Thousand two hundred nineteen & 10/100 Dollars.                 ' Fidelity Construction Co..

"By C. L. Williams, V. Pt."

—which said check was then and there perforated as follows:

"A. N. B., 1–29–17,"

—and did knowingly, willfully, and unlawfully, and with intent as aforesaid, cause to be paid upon and applied to the payment of said check the sum of $46,219.10 of the moneys, funds, and credits and the said association, a more particular description of which said moneys, funds and credits is to the grand jurors unknown; and said defendant, Charles L. Williams, did not at the time he so made and drew said check as aforesaid and caused to be paid upon and applied to the payment of said check the said sum of $46,219.10 as aforesaid, nor at any other time have authority from the Fidelity Construction Company, nor from any one whomsoever, to so make and draw said check and cause to be paid upon and applied to the payment of said check the said sum of $46,219.10; and the said Charles L. Williams is one and the same person as the said C. L. Williams whose name is signed to said check as aforesaid; and the said Charles L. Williams was not then and there nor at any other time vice president of said Fidelity Construction Company; and the proceeds of said check, being the aforesaid sum of $46,219.10, were by the said Charles L. Williams then and there knowingly, willfully, and with intent then and there to deceive any agent of the Comptroller of the Currency appointed to examine the affairs of the said Banking Association, applied on the books of said Banking Association to the liquidation of certain notes, to wit:

Note dated June 22, 1916, signed with the name of Lizzie M. Belden and Frank E. Belden, in the sum of $30.

Note dated March 24, 1916, signed with the name of H. Le Main, in the sum of $41.50.

Note dated February 16, 1916, signed with the name of F. E. Godfrey, in the sum of $55.

Note dated April 16, 1916, signed with the name of H. L. Richards, in the sum of $100.

Note dated March 29, 1916, signed with the name of R. W. Place, in the sum of $150.

Note dated November 25, 1914, signed with the name of Rowland T. Bent, in the sum of $1,000.

Note dated November 25, 1914, signed with the name of Rowland T. Bent, in the sum of $1,000.

Note dated November 15, 1915, signed with the names of William H. Randall and Sarah Randall, in the sum of $200.

Note dated May 9, 1916, signed with the name of W. N. Howden, in the sum of $100.

Note dated January 3, 1916, signed with the name of Margaret A. Gibbons, in the sum of $30.

Note dated December 30, 1915, signed with the names of J. M. Chatterson and Ida C. Chatterson, in the sum of $4,700.

Note dated April 29, 1915, signed with the name of C. M. Holmquist, in the sum of $330, upon which there had been paid the sum of $80.

Note dated December 16, 1915, signed with the names of F. L. Botsford and A. G. Botsford, in the sum of $4,500.

Note dated December 14, 1914, signed with the names of J. Clyde Kutzner and Nannie A. Kutzner, in the sum of $1,170.

Note dated May 12, 1916, signed with the name of Frank Von Tesmar, in the sum of $608.58.

Note dated June 29, 1916, signed with the name of Frank Von Tesmar, in the sum of $76.55.

Note dated July 31, 1916, signed with the name of Frank Von Tesmar, in the sum of $57.47.

Note dated October 3, 1916, signed with the name of Frank Von Tesmar, in the sum of $9,000.

Note dated November 23, 1916, signed with the name of Frank Von Tesmar, in the sum of $400.

Note dated December 1, 1916, signed with the name of Frank Von Tesmar, in the sum of $3,000.

Note dated December 11, 1916, signed with the name of Frank Von Tesmar, in the sum of $12,500.

Note dated December 11, 1916, signed with the name of Frank Von Tesmar, in the sum of $500.

—a more particular description of which notes was to the grand jurors unknown, and all of which constituted part of the assets of the bank.

The statute upon which all of the counts here involved were based (R. S. § 5209 [Comp. St. § 9772]), in so far as applicable, declares:

"Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association * * * or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association, or any other company body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association, * * *" shall be punished in a prescribed way.

In the case of Batchelor v. United States, 156 U. S. 426, 429, 15 Sup. Ct. 446, 447 (39 L. Ed. 478), in considering that statute, the Supreme Court said:

"By the settled rules of criminal pleading, and by the previous decisions of this court, the words 'willfully misapplies,' having no settled technical meaning (such as the word 'embezzle' has in the statutes, or the words 'steal, take, and carry away' have at common law), do not, of themselves, fully and clearly set forth every element necessary to constitute the offense intended to be punished, but they must be supplemented by further averments, showing how the misapplication was made, and that it was an unlawful one. Without such averments there is no sufficient description of the exact offense with which the defendant is charged, so as to enable him to defend himself against it, or to plead an acquittal or conviction in bar of a future prosecution for the same cause. United States v. Britton, 107 U. S. 655, 661, 669; United States v. Northway, 120 U. S. 327, 332, 334; Evans v. United States, 153 U. S. 584, 587, 588."

In that case the court held that the attempt there made to set forth how the misapplication was made, and that it was unlawful, was too indefinite and uncertain.

[4] In the present case, however, the indictment, in our opinion, does clearly and specifically show how the alleged misapplication of the $46,219.10 of the moneys, funds, and credits of the bank was made, and that it was so made by the defendant with the alleged unlawful intent to deceive the Comptroller of the Currency; for it expressly alleges that the defendant, as agent and vice president of the bank, had

as such the management, direction, and control over its moneys, funds, and credits, and did on a specified day willfully and unlawfully, with intent to deceive the comptroller, draw a check upon the bank for $46,219.10 in the name of Fidelity Construction Company, by himself as its vice president, and, with the alleged intent, willfully and unlawfully caused $46,219.10 of the moneys, funds, and credits of the bank to be applied in the payment of that check, which money was thereupon willfully and unlawfully applied by the defendant on the books of the bank to the liquidation of certain specified promissory notes with the intent to deceive the comptroller, he, the defendant, having no authority from the Fidelity Construction Company to draw said check or to cause its payment, and not being at the time or at any time vice president of that company. See Evans v. United States, 153 U. S. 584, 593, 14 Sup. Ct. 934, 38 L. Ed. 830; United States v. Eno (C. C.) 56 Fed. 218, 220; Breese v. United States, 106 Fed. 680, 685, 45 C. C. A. 535; United States v. Morse (C. C.) 161 Fed. 429, and numerous cases there cited.

Count 33 alleged, in substance, that on January 29, 1917, the defendant, at the time being vice president and agent of the bank, did knowingly, willfully, unlawfully, and feloniously, and with intent to deceive any agent appointed by the Comptroller of the Currency to examine the affairs of the said banking institution, abstract from the credits thereof certain specifically described promissory notes belonging to the bank and constituting part of its assets.

[5] While the word "abstract" is not a word of settled technical meaning like the word "embezzle," as used in the statutes defining the crime of embezzlement, or the words "steal, take, and carry away," as used to define the crime of larceny at common law (U. S. v. Northway, 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664; Batchelor v. U. S., 156 U. S. 426, 15 Sup. Ct. 446, 39 L. Ed. 478), there can, in our opinion, be no misunderstanding of the true meaning of the allegation of the willful and felonious abstraction by an officer and agent of a bank of certain specifically described promissory notes constituting a part of its assets; the words "steal, take, and carry away" could not make its meaning plainer. We therefore have no difficulty in sustaining the validity of count 33.

The sufficiency of counts 16, 17, 21, and 22, charging the willful and unlawful entry in the books of the bank of specifically described false entries by the defendant with intent to deceive the comptroller, does not, we think, admit of question.

We have given very careful consideration to the very full and painstaking charge of the learned judge of the court below to the jury, and are of the opinion that it embraced the substance of all of the defendant's requested instructions that were appropriate and proper, and was without any error of which the plaintiff in error can justly complain.

The judgment is affirmed.